ORVILLA KNUTSON, by her next Friend, OLE KNUTSON, Appellee, v. DAVE LURIE et al., Appellants.

No. 42101.

NOVEMBER 21, 1933.

Stowe & Kirchner, and Putnam, Putnam, Langdon & Fillmore, for appellants.

Frank S. Lovrien, and Mitchell & Mitchell, for appellee.

KINDIG, J.—Dave Lurie and Mrs. Dave Lurie, the defendants-

appellants, are husband and wife. They live in the northeast part of Fort Dodge. Some time in the latter part of June, the Luries employed Orvilla Knutson, who by her next friend and father, Ole Knutson, is the plaintiff-appellee. Orvilla Knutson was thus employed by the appellants as a domestic to work in their home. She, according to her testimony, was "to clean house", "get the meals", or assist in getting the meals, and "take care" of the two Lurie children then at home. The one child was two years old and the other seven.

A few days before July 3, 1931, the maid, Orvilla Knutson, took a pair of her own dress shoes to a shoe repair shop in Fort Dodge. Her purpose in so doing was to have the shoes repaired. During the day of July 3, 1931, Mrs. Lurie was entertaining guests from Omaha who were staying, at least part of the time, in the home of some of Mrs. Lurie's relatives in Fort Dodge. In the afternoon of July 3, Mrs. Lurie took these guests to the Orpheum Theatre. Before Mrs. Lurie left with her guests, however, the maid, Orvilla Knutson, asked her if she would get the shoes left at the repair shop, as before explained. Mrs. Lurie, the appellant, said she would do so. Whereupon Mrs. Lurie went to the Orpheum Theatre with her guests. They returned in the afternoon at 5:30 or 6 o'clock. Upon their return, Orvilla Knutson asked Mrs. Lurie if she had gotten the shoes, to which Mrs. Lurie replied that "she had forgotten them".

Dinner was then prepared and served to the guests. After the meal was served, Mrs. Lurie, her guests, the two children, and the maid, Orvilla Knutson, got into the car and went down town to get the shoes. The automobile, upon this occasion, was driven by Mrs. Lurie. When arriving at the shoe repair shop, Orvilla Knutson alighted from the car, obtained the shoes, and paid for their repair. She then again entered the automobile and Mrs. Lurie proceeded homeward. As the party arrived at Second Avenue North and Eighteenth Street on their way home, another car on a side street approached the intersection at the same time and there was a collision. Because of the collision, Orvilla Knutson was severely injured.

In due time, Orvilla Knutson, through her next friend, Ole Knutson, commenced this action against the appellants to recover damages for the injuries. Dave Lurie was made a party to the suit because he owned the automobile and consented that it be driven by the appellant Mrs. Dave Lurie. The basis for recovery set forth in

the plaintiff's petition was negligence. By way of answer to the petition, the appellants pleaded: First, that the proximate cause of the injury was the negligence of the driver of the car on the side street; and, second, that Orvilla Knutson, at the time in question, was a guest in appellants' car, and therefore could not recover on any basis under the circumstances except for the recklessness of the appellant Mrs. Dave Lurie. At the close of the plaintiff's evidence, a motion was made by the appellants for a directed verdict in their favor, on the theory, among others, that the appellee had not proven recklessness on the part of Mrs. Dave Lurie. That motion, however, was overruled, and the issues were submitted to the jury. After consideration, a verdict was returned for the appellee, and the district court entered judgment accordingly. From the judgment thus entered, the appellants appeal.

I. A reversal is first asked by the appellants because the district court refused to sustain its motion for a directed verdict on the theory that the appellee could recover, if at all, only upon the ground of recklessness, as distinguished from negligence. When stating her cause of action, the appellee did not allege recklessness. It is her theory that she was not a guest in the appellants' car at the time in question, but rather a servant performing her master's duties, and therefore need not allege recklessness in her petition. Consequently it is important at this place to determine whether there is evidence upon which the jury could find that Orvilla Knutson was a guest in the appellants' car. Section 5026-b1 of the 1931 Code provides:

"The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle."

The appellant Mrs. Dave Lurie was not under the influence of intoxicating liquor when the accident happened, and therefore no recovery is sought under the statute on that basis.

But it is claimed by the appellee that she was not a guest in the appellants' car, as contemplated by the aforesaid statute, and therefore she is entitled to recover from the appellants on the ground of negligence. On the other hand, it is argued by the ap-

pellants that Orvilla Knutson was a guest in their automobile, and therefore she can recover for her injuries only by proving that Mrs. Dave Lurie recklessly caused the collision. If Orvilla Knutson, however, was not a guest or an occupant of the appellants' car by invitation, but was a passenger therein for the purpose of performing and in order to perform her duties as a servant, then she can recover for the negligence of the driver and need not, in such event, rely upon the reckless operation of the car. One may be a passenger in an automobile without being a guest, a mere passenger by invitation, or a passenger for hire in the legal sense of the word. There are, in fact, a multitude of persons riding in cars daily who are not guests, passengers by mere invitation, or passengers for hire within the legal meaning of that term. A person riding in an automobile may be there because of the relationship of master and servant existing between him and the owner. In other instances, the rider in an automobile may be there (without the relationship of master and servant) for the definite and tangible benefit of the owner or operator; or such person may be in the automobile (without the relationship of master and servant) for the mutual, definite, and tangible benefit of the owner or operator on the one hand, and of himself on the other. Kruy v. Smith et ux., 108 Conn. 628, 144 A. 304; Gage v. Chapin Motors, Inc., 115 Conn. 546, 162 A. 17; Latham v. Hankey, 117 Conn. 5, 166 A. 400; Russell v. Parlee, 115 Conn. 687, 163 A. 404; Smith v. Fall River Joint Union High School District et al., 118 Cal. App. 673, 5 P. (2d) 930; Sullivan v. Richardson, 119 Cal. App. 367, 6 P. (2d) 567; Sumner v. Edmunds et al. (Cal. App.) 21 P. (2d) 159; Royal Finance Co. of California v. Miller, 47 F. (2d) 24 (9th Circuit); Labatte v. Lavallee, 258 Mass. 527, 155 N. E. 433; Lyttle v. Monto, 248 Mass. 340, 142 N. E. 795; Jackson v. Queen, 257 Mass. 515, 154 N. E. 78; Loftus v. Pelletier, 223 Mass. 63, 111 N. E. 712. See, also, Bookhart v. Greenlease-Lied Motor Co., 215 Iowa 8, 244 N. W. 721, 82 A. L. R. 1359; Crawford v. Foster, 110 Cal. App. 81, 293 P. 841.

When the legislature of Iowa used the phrase in section 5026-b1, before quoted, to-wit, "as a guest or by invitation and not for hire", its evident attempt was to exclude recovery by a guest or a mere invitee except for the reckless operation of the automobile. The use of the phrase "and not for hire" was merely to aid in the understanding of the meaning of the word "guest" and of the phrase "by invitation". By using those words and phrases, the legislature

did not intend to include all persons who might from time to time ride in an automobile, as before explained. It is evident that the intent of the legislature, therefore, was to recognize nongratuitous riders in an automobile, as well as a guest and a mere invitee. Likewise, it is apparent that the legislature intended to distinguish between "passenger for hire," as that term is used in law, and other nongratuitous riders in an automobile. Through the legislation, a safeguard against the prevalent claims for damages by guests or mere invitees was placed around the owner and operator of the car. Although, in the transportation of the guest or the mere invitee, no fare of any kind was asked by the owner or operator, yet the guest and invitee, without gratitude, frequently commence suit on every conceivable charge of negligence.

In Bookhart v. Greenlease-Lied Motor Co., 215 Iowa 8, (244 N. W. 721, 82 A. L. R. 1359) supra, we said, reading on page 11:

"In order to arrive at the proper construction to be placed upon a statute, it is proper to look at the law as it previously stood, the matter sought to be remedied, and the nature and spirit of the statute. * * * As is well stated in the case last cited [Crawford v. Foster, 110 Cal. App. 81, 293 P. 841, at page 843]: 'It has been held that the terms of a statute should be construed with their intent and purpose in view. * * * The purpose and object that the legislature had in mind sometimes throws light upon the meaning of the language used. The situation that this section (one similar to Section 5026-b1, Code 1931) was apparently designed to prevent is well known. As the use of automobiles became almost universal, the proverbial ingratitude of the dog that bites the hand that feeds him, found a counterpart in the many cases that arose, where generous drivers, having offered rides to guests, later found themselves defendants in cases that often turned upon close questions of negligence. Undoubtedly, the legislature, in adopting this act, reflected a certain natural feeling as to the injustice of such a situation.' "

Many different statutes relating to this matter have been passed in the several states. No one of them is exactly like the other. That situation naturally would arise because of the different personnel of the various state legislatures. So, the interpretation placed upon a given statute by the court of that state might not apply when considering the statute in another state. Some state courts have placed

the deciding point, in determining whether a passenger is a guest, on whether there was consideration for the transportation. Crawford v. Foster (110 Cal. App. 81, 293 P. 841), supra. On the other hand, other courts, as before indicated, have placed the criterion on other grounds. These grounds are: First, that the relationship of master and servant exists between the passenger and the owner or operator of the car; or, second, that the passenger (without the relationship of master and servant) became such for the benefit of the operator or owner of the car; and/or, third, that the passenger (without the relationship of master and servant) is conveyed in the car for the mutual benefit of the operator on the one hand, and of the passenger on the other. Under any one of these three grounds for determining such relationship, the rider in the car is a nongratuitous passenger. Undoubtedly it is the theory of the cases that when the relationship of master and servant exists between the passenger and the operator of the car, the transportation is for the mutual benefit of both. Kruy v. Smith et ux. (108 Conn. 628, 144 A. 304), supra; Gage v. Chapin Motors, Inc. (115 Conn. 546, 162 A. 17), supra; Latham v. Hankey (117 Conn. 5, 166 A. 400), supra; Russell v. Parlee (115 Conn. 687, 163 A. 404), supra; Royal Finance Co. of California v. Miller ([C. C. A.] 47 F. [2d] 24), supra; Labatte v. Lavallee (258 Mass. 527, 155 N. E. 433), supra; Lyttle v. Monto (248 Mass. 340, 142 N. E. 795), supra; Jackson v. Queen (257 Mass. 515, 154 N. E. 78), supra; Loftus v. Pelletier (223 Mass. 63, 111 N. E. 712), supra. See, also, Smith v. Fall River Joint Union High School District et al. (118 Cal. App. 673, 5 P. [2d] 930), supra; Sullivan v. Richardson (119 Cal. App. 367, 6 P. [2d] 567), supra; Sumner v. Edmunds et al. ([Cal. App.] 21 P. [2d] 159), supra.

The Connecticut court said in Russell v. Parlee (115 Conn. 687, 163 A. 404, reading on page 406), supra:

"It may well have appeared to the Legislature that there were sound social reasons for denying a recovery for negligence against one who was transporting in his automobile a member of his family or a social guest or casual invitee, in an action brought by the recipient of his hospitality, which would not exist where a *mutual benefit* growing out of the relationship of the parties was contemplated, even though the benefit to be received was incidental, and not a technical legal benefit which the parties by their contract had bargained for as the consideration for the transportation. Bearing in

mind the objects which it may be assumed were within the legislative purpose in the enactment of this legislation, we are not prepared to say that the Legislature intended to deny a right of recovery for negligence to a passenger in an automobile unless there was, by bargain between the parties, a consideration for the transportation moving to the owner or operator. The person transported is not a guest within the meaning of the statute if the transportation is for the *mutual benefit of both parties,* and in determining whether it was for their mutual benefit the relationship between the parties to which it was an incident may be considered. * * * The relationship must be definite and the benefit tangible, * * * but it is not required that the relationship be such that the benefit accruing is the consideration for the transportation agreed upon by the parties." (Italics are ours.)

Returning to page 405 of 163 A., we find the Connecticut court further said:

"In the Kruy case [Kruy v. Smith, 108 Conn. 628, 144 A. 304] there existed between the transporter and the person transported the legal relationship of master and servant and the transportation was held to be an incident of that relationship."

In the Kruy case, the Connecticut court declared that:

"Mrs. Smith herself testified that she went to get the plaintiff [a laundress who was to work for Mrs. Smith] under a prearrangement made with her, and that by so doing she enabled her to save the considerable longer time which would have been required, had she traveled as she was accustomed to do by street railway. It is difficult to see upon the evidence how any other conclusion could reasonably have been reached than that the plaintiff was a servant, and not a 'guest', at the time of the injury."

After reading the foregoing cases, it becomes apparent that one may be an occupant of an automobile without being a guest or a mere invitee, and yet not be a passenger for hire. There is no relationship of guest or passenger by mere invitation if the occupant of the car is a nongratuitous passenger, as that term previously has been defined. Furthermore, it is manifest that in determining the benefit, it is proper to take into consideration "not merely the act of transportation * * * but also any contract or relationship between the parties to which it was an incident."

But, as said in Leete v. Griswold Post No. 79, American Legion, 114 Conn. 400, 158 A. 919, reading on page 922:

" * * * The extent and nature of the reciprocal advantages which will produce this result are not unlimited but are confined to certain definite relations, such as *master and servant*, and to *tangible benefits* accruing to the transporter,—as in saving time for which he as master pays, facilitation of a servant's work, or the like." (Italics are ours.)

To the same effect, see Master v. Horowitz, 237 App. Div. 237, 261 N. Y. S. 722, and cases above cited.

While in Bookhart v Greenlease-Lied Motor Co. (215 Iowa 8, 244 N. W. 721, 82 A. L. R. 1359), supra, this court held that the mutual benefit described in that case amounted to a consideration for the transportation, and that the passenger because thereof became one for hire, that decision was based upon a California case (Crawford v. Foster, 110 Cal. App. 81, 293 P. 841), cited therein. Because of the differences between the statutes of Iowa and those of California, we feel that the basis upon which the Bookhart case was decided under the Iowa statute is not well supported. The result reached in the Bookhart case is right, but it should be placed upon the basis of the mutual benefit to the parties concerned. As thus modified, the Bookhart case is correct.

Then, as a natural consequence of the rules above announced, if the facts are in dispute concerning the purpose of the transportation or the conditions under which it is made, a jury question, as is general in law actions, will be presented. It is necessary, then, to consider the facts in the case at bar to determine whether or not the district court correctly presented that issue to the jury. Bookhart v. Greenlease-Lied Motor Co., (215 Iowa 8, 244 N. W. 721, 82 A. L. R. 1359), supra.

There is a sharp conflict in the evidence offered by the appellants when weighed against that presented by the appellee. According to the appellants' evidence, Orvilla Knutson was a guest at the time of the collision, while riding in their car, as distinguished from a servant performing the duties of her mistress. Nevertheless, in considering the appellee's side of the controversy, it is necessary to give her evidence all the effect to which it is fairly entitled. When so doing, it becomes evident that a jury question was presented as to whether she, at the time under consideration, while rid-

ing in the appellants' automobile, was a servant performing the duties of her mistress. As before indicated, the scope of the employment into which Orvilla Knutson entered included, among other things, the doing of housework, preparing the meals, and "taking care" of the two little girls.

While Orvilla Knutson was thus employed, she occasionally wore the dress shoes, or slippers, before mentioned. Because these shoes became somewhat worn at the heels, she took them to the shoe repair shop. It was to get these shoes and to entertain some guests visiting at the appellants' home, the jury could find, that the trip in question was made in the appellants' automobile. The appellant Mrs. Dave Lurie, as before suggested, had forgotten the shoes in the afternoon when she was attending the theater with her guests. After dinner on that evening, Mrs. Lurie was still entertaining her guests. Early that evening, according to the appellee's evidence, Mrs. Lurie intended to take her guests in her automobile to the home of a relative. Mrs. Lurie, because she had forgotten the shoes in the afternoon, and, the jury could find, because she desired to further entertain her guests following the dinner, demanded, according to the appellee's testimony, that certain work first be performed by Orvilla Knutson, and then a trip be made for the shoes. The work was to be completed, however, according to Mrs. Lurie's demands, by Orvilla Knutson after she returned to the Lurie home. Orvilla testified that Mrs. Lurie commanded her to ride in the automobile and take care of the baby on the trip for the shoes. Under her contract of employment, Orvilla was required to take care of the baby. All the guests, together with the Lurie children, Mrs. Lurie the driver, and the maid Orvilla Knutson, got into the car to go for the shoes. As Mrs. Lurie drove the car to the shoe shop, Orvilla, according to her testimony, tended the baby as commanded by her mistress. When the party arrived at the shoe shop, Orvilla, accompanied by the baby, went into the shop, paid for, and obtained, the shoes. Then Orvilla returned to the Lurie car and got into it with the baby. Immediately thereafter, the party started for the Lurie home. Mrs. Lurie, as before explained, intended to visit that evening with the guests in the home of certain relatives. It is not clear, according to Orvilla's testimony, whether, after doing the work awaiting her at the Lurie home, she was to remain there for the rest of the evening with the children. She says that Mrs. Lurie

had not informed her in regard to this. On the way home, however, the accident occurred, as previously stated.

This event happened on the 3d day of July. Orvilla had planned to attend a dance on the 4th of July, at which occasion she intended to wear the shoes. Under that record, it is earnestly contended by the appellants that Orvilla was merely a guest in the Lurie car, and therefore could not recover for her injuries received in the collision without the allegation in her petition and proof at the trial of recklessness on Mrs. Lurie's part. In support of that contention, it is said by the appellants that the trip for the shoes was only to accommodate the maid, Orvilla. No benefit, it is said, was received from the trip by the Luries. Likewise, it is contended that the trip was no part of Orvilla's employment as a servant in the Lurie home. Her care of the baby on the trip, the appellants suggest, was an immaterial event. Manifestly, a careful study of the record indicates the fallacy of the appellants' position.

While at times the relationship of the parties rather indefinitely appears, yet, under the whole record, it is apparent that the trip, so far as Orvilla Knutson is concerned, was made within the terms and because of her contract of employment. No doubt Orvilla received some benefit from the trip, but likewise Mrs. Lurie was benefited. In fact, they were mutually benefited. The maid was benefited because she was furnished an opportunity to obtain her shoes on July 3d in order that she might wear them on July 4th. On the other hand, the Luries were benefited, the jury were warranted in finding, because: First, the maid was more quickly returned to her work than she would have been had she walked after the shoes or taken the street car or bus to get them; and, second, Mrs. Lurie, while making the trip for the shoes at the particular time in question just before taking her guests to the relative's home, was furnished an additional opportunity in which to entertain the guests. Orvilla testified, as before said, that at Mrs. Lurie's command she took care of the baby on the trip for the shoes. Thereby she assisted Mrs. Lurie under the contract of employment while the latter was entertaining her guests. So, it appears that the benefits from the trip were mutual. While making the trip, Orvilla Knutson was still the maid. She did not, according to her testimony, have a temporary recess or vacation from her employment. At all times during the trip, as well as at the inception thereof, Orvilla, according to her testimony, acted under the express and emphatic com-

mands and directions of her mistress. If Mrs. Lurie had not been entertaining her guests, would she have made the trip for Orvilla's shoes? The jury at least could find, under the record, that the trip was made for the entertainment of the Lurie guests, as well as to obtain the shoes for Orvilla. These guests were passengers in the car on the trip. Immediately after the trip, Mrs. Lurie intended to take these visitors to the home of a relative. Mrs. Lurie's benefit because of the trip, then, is definite and tangible.

Under the rule relating to nongratuitous passengers based upon the authorities above cited, it is apparent, then, that Orvilla, the jury could find, was not a guest on the trip, but rather, under the circumstances, was a servant performing the duties of her mistress. In the case at bar the facts are as strongly in support of the rule as the facts were in support thereof in the various cases previously cited. The benefits of the trip were mutual, the jury could further find under the record. Of course, as before indicated, the witnesses for Mrs. Lurie dispute the testimony of the maid at this point, but because of the conflicting evidence in relation to this matter, the district court properly submitted the issue to the jury.

■ II. Mrs. Lurie was required, under the law, to exercise due care when driving the car. Although the automobile might, under ordinary circumstances, be a safe place in which the maid could work, yet, when in motion, the automobile would become an unsafe place in which to work if it were negligently driven. As to whether it was negligently driven was an issue submitted to the jury by the district court. If the car, as found by the jury, was negligently driven, then, under the circumstances, Orvilla was entitled to recover for her injuries.

III. When the Lurie car, traveling in a northerly direction on Eighteenth Street, approached the above-mentioned street intersection from the south, another automobile, as before stated, likewise approached the intersection from the west, traveling in an easterly direction on Second Avenue North. George Petroff was the driver of the car approaching the intersection from the west. As the cars came together, the right portion of the front bumper on the Petroff car came in contact with the back left fender of the Lurie car. Therefore, as the vehicles approached the intersection, Mrs. Lurie's car was to the right of the Petroff car. Section 5035 of the 1931 Code provides:

"Where two vehicles are approaching on any public street or

highway so that their paths will intersect and there is danger of collision, the vehicle approaching the other from the right shall have the right of way. * * * "  .

Of course, it is a question of fact as to whether the vehicles approached the intersection at the same time. A material consideration in determining who has the right of way at such street intersection is the manner in which the two vehicles approach. Everything depends upon the facts in the case. In driving her automobile at the time in question, the appellant Mrs. Lurie, in determining her due care, had a right to consider the fact that she had the right of way at the intersection, if, under the record, she did in truth have it. Jelsma v. English, 210 Iowa 1065, 231 N. W. 304. Regardless of that fact, however, it was incumbent upon Mrs. Lurie, the appellant, to exercise due care at all times, whether she had the right of way or not.

When instructing the jury, the district court, in instruction No. 10, stated the duties imposed upon Mrs. Lurie, the appellant, in making observations for cars coming from side streets. Whereupon, the district court further instructed the jury as follows:

"In this connection you are further instructed that in operating a motor vehicle upon a public highway it is the duty of the driver thereof to keep a lookout for other vehicles upon said highway or approaching the same, or in such proximity thereto that there is danger of collision and injury, his duty in this respect being to exercise ordinary care and observation, and if the driver discovers, or in the exercise of reasonable care and observation could have discovered any vehicle upon said highway, or approaching the same, or in such proximity thereto, that there was danger of collision, *it is his duty to reduce the speed of his car so in case such vehicle enters into his path, and there is danger of collision, he can bring his vehicle to a stop and avoid injury.*" (Italics are ours.)

This instruction is assigned by the appellants as an additional error justifying a reversal. An exception was duly taken to the instruction and a motion for a new trial was based thereon. Nevertheless, the district court held the instruction good and refused to grant a new trial. The appeal covers not only the judgment entered, but the ruling on the motion for a new trial and the ruling on the objections and exceptions to the instructions as well.

Under the instruction of the district court, if Mrs. Lurie observed a car coming, or in the exercise of reasonable care should have observed it, then it became her duty to reduce the speed of her car whether she, as a reasonably prudent person, could do so or not. Furthermore, under the instruction, it became the duty of Mrs. Lurie, if there was danger of a collision, to bring her car to a stop and avoid injury, whether, as a reasonably prudent person, she could do so or not. The district court, in Looney v. Parker, 210 Iowa 85, reading on pages 89 and 90 (230 N. W. 570, 572), gave the following instruction:

"The driver of a car following another car has a duty to perform in being prepared for a sudden stop by the car ahead of him and keep at such a distance and to maintain such control of his car as to enable him to stop without hitting the car ahead of him."

Concerning that instruction, we said in the Looney case, reading on page 90:

"The first part of the instruction imposed upon the driver the duty of exercising such control as would avoid collision, whether he was negligent or not. The driver's duty was to exercise reasonable or ordinary care."

Again we said in Jarvis v. Stone, 216 Iowa 27 (247 N. W. 393, 396), reading on page 34:

"The instruction [the one involved in the Jarvis case] cannot be approved on account of the statements in relation to the duty devolving on the driver of the car upon discovering, or at the time he should have discovered, the presence of the plaintiff on the road. The defendant was not obligated to 'adopt such means as were within his power to check the progress of his vehicle and avoid collision with the plaintiff.' He was required to use ordinary care. It cannot be said as a matter of law that a failure to use all means within the power of the driver to check the car was a failure to exercise ordinary care."

Returning now to the instruction in the case at bar, it is apparent that the district court therein imposed upon the appellant Mrs. Lurie more than a duty to use reasonable or ordinary care. The instruction of the district court in the case at bar required Mrs. Lurie, first, to reduce the speed of her car whether by reasonable

or ordinary care she could do so or not; and, second, the instruction required Mrs. Lurie to stop her car and avoid the injury even though she could not do so by the exercise of reasonable or ordinary care. It was the duty of Mrs. Lurie at all times to use reasonable or ordinary care. What is reasonable or ordinary care always must be determined by the facts and circumstances of the case. Obviously the instruction, even when read with the remainder of the court's charge, was prejudicial, and was duly excepted to by the appellants. Because of the error in giving the instruction, the cause must be reversed.

Wherefore, the judgment of the district court is reversed.— Reversed.

ANDERSON, KINTZINGER, MITCHELL, EVANS, and DONEGAN, JJ., concur.