OPINION
By POWELL, CJ.
The facts are stated in the Opinion.
The decision which this Court is called upon to make is one of great significance to our country now facing its most critical hour.
Upon the face of the pleadings this would appear to be a simple action for declaratory judgment brought under the Uniform Declaratory Judgments Act of Ohio (§12102-1 GC et seq.), only three persons being directly involved. However simple the appearance of this action the potential effect of the declaration sought is so far-reaching and of such vital importance to a Nation at war that the United States Government through the office of Price Administration (O.P.A.) and the Office of Civilian Defense (O.C.D.) has made application, has been granted leave and has filed a brief as amicus curiae setting forth the official position of the Government upon the issues presented by the instant controversy and describing the compelling considerations supporting that position.
There is no dispute as to the facts. Counsel for both the plaintiff and the defendants have filed with the Court an Agreed Statement which is stipulated to be a true and correct statement of the relevant and material facts to the controversy at issue, as follows:
“1. The plaintiff is Joseph C. Miller, residing at 14404 Darwin Avenue, Cleveland, Ohio; and the defendants are Thomas Fairley, residing at 9214 Rosalind Avenue, Cleveland, Ohio, and Walter Kulavick, residing at 573 East 101st Street, Cleveland, Ohio.
“2. Said plaintiff and defendants are regular employees of the Standard Oil Company at its No. 1 Works in Cleveland, Ohio, engaged in war work for the United States of America.
“3. Said plaintiff and defendants have qualified as a riding group under the general supervision of the Plant Transportation Committee of said Standard Oil Company and under the provisions of Section 504 (a) (7) of the Re *81 vised Tire Rationing Regulations, as amended.
“4. On the 12th day of September, 1942, said plaintiff and defendants entered into a written ■•agreement, which said agreement is set forth verbatim in the petition, wherein the plaintiff agreed to transport the defendants, ‘round trip’, at least four times a week between their present homes and the Standard Oil Company No. I Works at Cleveland, Ohio; and under said agreement, each of said defendants agreed to pay the plaintiff 20c per day in consideration of said transportation by the plaintiff, said 20c per day being mutually understood to represent one-third of the cost of gasoline and oil consumed on each round trip.
“5. Said agreement of September 12, 1942, heretofore referred to, is now in full force and effect, and said defendants are now being transported by said plaintiff under the terms of said agreement.
“6. Plaintiff and defendants are in disagreement as to their legal rights, obligations and duties under said contract with respect to each other and to the general public. Plaintiff claims that the defendants are his guests within the provisions of §6308-8 GC, known as the Guest Statute. The defendants deny this, claiming that the plaintiff is a private carrier for hire.
“7. Said group riding and consequent contractual relationships between the plaintiff and defendants arise by reason of the orders promulgated by the Office of Price Administration under authority ■granted it to conserve the rubber stock pile of the United States and to enable the war effort to be more adequately pursued in the face of a complete break-down of the transportation facilities of this country by reason of a rubber shortage.
“8. Said Office of Price Administration, on June 19, 1942, promulgated Amendment 16 to the Revised Tire Rationing Regulations, wherein it provided that executives, engineers, technicians and - workers whose occupations or duties are performed at establishments employing .one hundred or more employees and are of a nature which can reasonably be performed at a fixed place and at regular hours may obtain recapping facilities, or, in the event that said persons’ tires are incapable of recapping, may obtain Grade II tires for transportation between, their residence and their places of employment, where said persons are employed at power generation or transmission facilities, transportation or communication facilities or agricultural, extractive, industrial, military or naval establishments, provided the following conditions are met;
“‘Sec. 1315.504 (a). Eligibility-classification: List B.
“‘(7) (i) The Board shall issue a certificate under this paragraph (a) (7) only if; (1) the applicant is employed at an establishment which has an Organized Transportation Plan; and (2) the applicant presents with his application the written statement provided for in subdivision (iii).
“‘(ii) An Organized Transportation Plan is a plan to transport with a minimum use of tires all war workers who require automobiles for transportation to and from.their work. Such a plan shall be organized and administered by a joint management-labor committee, or some similar group or individual designated by agreement between or with the consent of management and labor to coordinate the transportation of the workers.
“‘(iii) Such written statement *82 shall contain a certification that all of the following requirements have been met:
“ ‘ (a) that the applicant is not a temporary or transient worker at such establishment;
“‘(b) that other practicable means of transportation are not available; or that their use requires the applicant to consume more than one hour in going either to or from his work;
“ ‘ (c) that the applicant resides at least two miles from his place of employment; and
“‘ (d) that the applicant regularly carries with him at least three other workers of any such establishment, none of whom resides less than two miles from his work; or, if the applicant operates a vehicle having a capacity of less than four, that such vehicle is regularly utilized to its full capacity; or that the applicant cannot transport the requisite number of other workers for the requisite distance because they do not reside near the route regularly traveled by him or do not travel at approximately the same time as he does, but that he regularly transports as many workers as possible.
“ ‘(iv) No certificate shall be issued under this paragraph (a) (7) unless the Board is satisfied that the applicant meets the other requirements of these regulations, that he is actually participating in an Organized Transportation Plan, and that such plan is administered properly and in good faith.’
“9. The defendants admit the execution of the aforesaid contract.”
In addition to the foregoing the Court in reaching its decision, and with the full accord of the parties to this action, takes judicial notice of the following facts:
1. The Court takes judicial notice of thfe fact that our great Nation is engaged in a life and death struggle involving, in greater or lesser degree, every Nation on the globe and affecting the life and destiny of every human being — a struggle which is raging-with such ferocity and on a scale so huge as almost to defy human, comprehension; that we are fighting this war in order to retain and preserve for ourselves and our posterity the freedom, the liberties- and the way of life which we cherish and so long have enjoyed and to make certain that the less fortunate peoples of other lands shall also be- free and shall have the unfettered opportunity to develop and flourish; that to this high end we, as a Nation and as individuals,, have dedicated our lives and our fortunes; that in order to achieve-final victory it is essential that we-conserve and wisely use all of our material resources.
- 2. That there is a material and dangerous shortage of rubber; that. rubber is a vital necessity not only for the successful conduct of actual military operations-but also for the transportation to and from their place of employment of millions of men and women engaged in the production of the arms, munitions and other materials without which victory is impossible; that our public systems-of transportation are now taxed to the limit of their capacity; that some plan or system must be devised and put into operation which will conserve our rubber supply and permit our great and growing war industry to operate and produce without hindrance or interruption.
The President of the United States as our Commander-in-chief has called upon industry,, the workers, the farmers, the professions, indeed, upon all sections and classes of the population to. unite *83 in a mighty effort and to make •sacrifices unprecedented in our history to the end that this gigantic struggle in which we are involved will be speedily brought to a victorious conclusion. He has called upon all of us to contribute our skill, our ingenuity, our property and, if necessary, life itself. To this call every one of us must respond wholeheartedly with the knowledge that the future course of history and of civilization itself today hangs in the balance. Many of our citizens have foregone legal rights and privileges to which they would be properly entitled in times of peace and normality. Wages of millions have been frozen, rents throughout the Nation have been fixed, price ceilings have been placed upon hundreds of commodities. Under the stern lash of war necessity and the over-riding consideration of national survival many of our fellow Americans have seen their businesses which have taken a lifetime to build, swept away and the whole .pattern of their lives violently changed and uprooted. Others face death on far-flung fields of battle. 'These are times that call for sacrifice.
It is a fact well known to everyone that our Commander-in-chief has tremendous responsibilities resting upon his shoulders and while he may be given extraordinary and plenary powers under the Constitution during time of war .so that he may fulfill his responsibilities, the President, and all of us, fully realize that to win this war, it is not enough to have merely obedience to orders and directives and compulsion. There must be a wholehearted, spontaneous, united and cooperative effort by all of our citizens. That unity and that spirit of cooperative endeavor 'is now in process of attainment.
None can doubt that our Com•mander-in-ehief is giving of his best. The war production industry and the men and women who labor in these factories are giving all of their skill and industry and ingenuity. In fact, all the people must, and in the main, are doing their utmost, are cheerfully making the necessary sacrifices, are foregoing rights which they may have under the law, and are conforming their lives to the changing times and the living law which' changes with it. in order to bring this war of survival to an early and successful conclusion.
The courts have many important-duties to perform and grave responsibilities to shoulder in this time of crisis. They must be ever mindful of the fact that their decisions and judgments are now being rendered in a world at war and they must carefully consider the possible effects of their decisions upon the prosecution of that war. When called upon, to construe regulations or legislation the courts must brush aside all technicalities and without sacrificing in the least sound legal principles, construe the particular rule or statute against the background of a world in flames and in the broad light of all the facts and circumstances so as to provide for the common defense, promote the general welfare, and secure the blessings of liberty to our posterity.
The parties to this action seek a declaration of their legal status under the facts as hereinabove set forth. More precisely, the plaintiff seeks a declaration that under the facts and circumstances enumerated the defendants are, while being transported by him pursuant to the agreement entered into, guests within the meaning of §6308-6 GO. The defendants contend that they are not guests within the meaning of that statute.
At the outset it may be said that , *84 this action is well brought under the Uniform Declaratory Judgments Act. Sub-section 12 of the Uniform Declaratory Judgments Act declares that:
“its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered.”
Even if there were no legislative admonition to construe this Act liberally nevertheless the instant case is admirably well suited to the declaratory judgment procedure.
A serious question and controversy has arisen between the parties hereto which has given rise to grave uncertainty and insecurity with respect to their legal rights and status under the agreement which they have entered into. This uncertainty and this insecurity may be properly relieved by means of a declaratory judgment.
This case calls primarily for the construction of §6308-6 GC popularly known as the “Ohio Guest Statute” which reads as follows:
“The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wilful or wanton misconduct of such operator, owner, or person responsible for the operator of said motor vehicle.”
Some of the states having statutes similar to our own have defined in their statute “passengers for payment” and “guests.” Our legislature has not seen fit to do so. This leaves it squarely up to the Court in each case in which this statute is involved to determine, upon the basis of the particular facts and circumstances presented by the particular ease, considered in the light of established legal principles and in order to do justice between the parties, whether there existed between the parties the relationship of host and guest or that of carrier and passenger.
There is considerable conflict, and we might add, confusion, in the decisions of the courts as to precisely what constitutes a “guest” or a “passenger for payment” where the person being transported pays a share of the cost of the gasoline and oil consumed upon the trip. After a careful examination of many cases we have been unable to find any case wherein the facts and circumstances surrounding the making of the agreement to share the cost of gasoline and oil to be consumed on a motor trip are in any real sense comparable to the facts and surrounding circumstances of the making of the agreement here under consideration. Therefore, nothing can be gained by citing, analyzing or endeavoring to reconcile the conflict found in the various decisions.
A further reason for not doing so is that the Supreme Court of Ohio in its most recent decision involving a construction of §6308-8 GC (Duncan v Hutchinson, 139 Oh St 185), has set forth the applicable principles of law in such clear and convincing language that they no longer can successfully be controverted and are in the view of this Court decisive of the instant case.
Briefly, the facts in that case were that three married cono les planned a birthday party at a night club in a nearby city to which they were to drive in a car owned by one of them. It was in *85 formally agreed that they would share the cost of the gas and oil consumed on the trip. Enroute there was a collision and the plaintiff was injured. Suit was instituted by her against the owner and operator of the car.
It was claimed that plaintiff was being transported for payment under plaintiff’s promise to pay part of the cost of gasoline and oil for the trip, and that she was injured by reason of the negligent operation of defendant’s car. No charge jsras made that the defendant was guilty of any wilful or wanton misconduct. In his answer, the defendant admitted that the members of the party at the time plaintiff was injured were occupants of his automobile but alleged that they were guests without payment for transportation.
On trial of the case a motion for a directed verdict in favor of the defendant was overruled and a •verdict was returned in favor of the plaintiff, upon which verdict a .judgment was entered. On appeal to the Court of Appeals, the judgment was affirmed. The Supreme Court reversed the judgment and entered final judgment for the defendant.
The question as to whether or not an agreement to share the cost of gasoline and oil consumed on a pleasure trip under the facts in the case before the Court for review had the effect of transforming the relationship between the ■parties from that of guest and host to that of passenger for payment and carrier was squarely presented to the Supreme Court of Ohio. In an exhaustive opinion reviewing and analyzing the decisions of many jurisdictions, the Supreme Court concluded that it did not ■and that the defendant was entitled to the protection afforded by ■.the Guest Statute.
The syllabus in the case of Duncan v Hutchinson, supra, reads as follows:
“The sharing of the cost of gasoline and oil consumed on a motor vehicle trip taken for mutal pleasure or social purposes, without any business aspect, does not transform into a passenger one who without such exchange would be a guest, and is not ‘payment’ for transportation within the meaning of the Ohio Guest Statute (§6308-6. GC), so as to make the automobile host liable to such guest in the absence of wilful or wanton misconduct.
In the middle of page 188, Hart, J., speaking for a unanimous Court, defines the terms “guest” and “passenger” as related to the Ohio Guest Statute:
“The .sole question to be determined is whether the plaintiff was a ‘guest’ or ‘passenger’. This depends upon whether the transportation of the plaintiff was with or without ‘payment therefor.’”
Thus, it is definitely established in this jurisdiction that when one pays for his transportation in the motor vehicle of another he becomes a passenger and ceases to be a guest within the meaning Of §6308-6 GC.
Judge Hart goes on to declare what constitutes payment for one’s transportation. At the bottom of page 188, the Court says:
“What is meant by the words of the statute, ‘transported without payment therefor,’ as applied to the facts in this case? Keeping in mind the purpose of the statute, it would seem that any expense money paid by a person for a ride in an automobile which is not substantially commensurate with the cost of such transportation will *86 not take him out of the guest status fixed -by the statute, unless payment for transportation as such was actually agreed upon. The justice of this rule is based on the fact that it would be unfair to hold the motorist to liability for injuries to his guest due to the hazards of transportation, unless the motorist is, in turn, compensated for such transportation in a manner substantially commensurate with the cost and the hazards of the undertaking.” (Emphasis ours)
The emphasized language states a principle which immediately appeals to the sense of justice of every fair-minded person.
At first blush it may seem that there is a conflict between the phrase “unless payment for transportation as such was actually agreed upon” and the language which immediately follows- in the same paragraph. While the Court does not amplify the quoted phrase the apparent conflict disappears when the language employed is analyzed and the entire context of the opinion is considered.
It seems clear that the situation the Court had in mind when it used the phrase above quoted is one in which parties enter into an agreement by which one party agrees to transport the other for a stated sum which is deemed to be payment for the transportation as such. The party doing the transporting may make a bad bargain so that the money he receives does not cover the cost of- the trip; perhaps he has miscalculated and the sum which he receives covers only part of the cost of the gasoline and oil. Nevertheless, the payment made was for the “transportation as such” and was not a payment for a part of the cost of the gasoline and oil. Both' in the Duncan case and in the case at bar the payment which the persons being carried agreed to make is not for transportation as such but represents a sharing of the cost of the gasoline and oil and nothing else.
This Court is of the opinion that the payment which the defendants herein have agreed to make, to-wit, twenty cents each day, and which represents, according to the terms of the agreement, approximately one-third of the cost of the gasoline and oil consumed in each daily trip which the plaintiff has consented to make, is not “substantially commensúrate” with the cost of the transportation and will not take the defendants out of the guest status fixed by the statute. That payment of a pro-rata share of the cost of gasoline and oil consumed on a particular trip or series of trips is not substantially commensurate with the cost of the transportation given becomes readily apparent when it is remembered that the car owner has many other expenses and costs such as depreciation, license fees, repairs and insurance.
It might be urged that in the instant case the plaintiff is receiving compensation or payment in addition to a pro-rata sharing of the cost of gasoline and oil, in that by entering into the agreement with the defendants he becomes entitled, under certain circumstances, to have his tires recapped or may obtain Grade II tires, which right he would not have except for the fact that he had entered into the agreement in question. There is nothing in the agreed statement of facts which discloses the present condition of the tires of plaintiff’s automobile. Insofar as the facts disclose the tires may be in good condition and may outlast the life of this agreement, which is for one year, and may be terminated even sooner according to its terms by either par *87 ty upon one week written notice to the other.
If it should become necessary for plaintiff to exercise his right to have his tires recapped or to acquire Grade II tires before the termination of the contract defendants will be contributing nothing toward this expense. The plaintiff himself will have to bear the entire cost of the recapping or the purchase of tires, although his tires are being in a large measure worn in the transportation of the defendants herein. Furthermore this right is conferred by the government neither as a benefit nor as compensation to the individual car owner as such, but in order to permit the continued use of a motor vehicle vitally needed in the service of the country. The tires are consumed in that service and without some arrangement such as this providing for the recapping or replacing of those tires the whole scheme aimed at transporting war workers with a minimum consumption of rubber would inevitably collapse. The Court holds that this right to have his tires recapped or to purchase Grade II tires does not constitute payment to the plaintiff and does not have the effect of causing him to be compensated “in a manner substantially commensurate with the costs and hazards of the undertaking.”
In the Duncan case, Hart, J., after laying down the “substantially commensurate” test of payment, declares, at page 189:
“Where the relationship between the automobile host and a party riding with him has a business aspect and the transportation is supplied for their mutual benefit any payment or services rendered to the automobile _ host by such person for the ride will constitute ‘payment therefor’ and will remove the automobile host from the protection of the Statute.”
Thus, it would appear to be the rule in this jurisdiction that if the relationship between the plaintiff and the defendants has a “business aspect” then they stand in the relationship of carrier and passenger for payment since some payment, however inadequate, is being made. Does the relation between the plaintiff and the defendants have a “business aspect?” This Court is of the opinion that the instant relationship does not have a business aspect in. the sense in which that phrase has been used and commonly understood. Normally a business relationship is one which is created for personal profit or benefit or in the expectation of personal profit or benefit to be gained by the parties to the arrangement. The Supreme Court in the Duncan case gives several examples of what the courts generally have considered as giving a certain trip a business purpose or as giving the relationship between the motorist and the rider a business aspect. For example, the relationship between the carrier and the person being carried would have a business aspect when the passenger is a prospective purchaser of property which the automobile host has for sale and the trip is made for the purpose of inducing a sale (Crawford v Foster, 110 Cal. App. 81, 293 Pac. 841; Foale v Linsky, 279 Ill. App. 58), or when the automobile host has a financial or business interest in the time or service of the passenger (Knutson v Lurie, 217 Iowa, 192, 251 N. W. 147; Russell v Parlee, 115 Conn. 687, 163 Atl. 404). These are the usual situations which have confronted the courts and in which they have decided that the trip having a business purpose and the relationship be *88 tween the parties having a business aspect the person being carried was not a guest within the meaning of the guest statute.
In the case at bar the situation is far different. The Share-the-Ride arrangement is created not for the private profit or advantage of anyone or of any group, but solely and completely for the purpose of conserving our precious supply of rubber and of enabling the riders and the driver to reach their place of employment in order to pursue their occupations for the benefit of our country by promoting its war effort. That is the real object of the agreement.
If, as this Court believes, the chief consideration motivating the Supreme Court in the Duncan case was the fact that no pecuniary benefit was to be derived by the driver of the automobile either in the form of reimbursement beyond the cost of the gasoline and oil consumed on the trip or in the form of prospective profit arising out of some business venture in which the driver and the passengers were engaged, then the same may well be said of the instant case. As the Supreme Court of Michigan declared in the case of Bushouse v Brom, 297 Mich. 616, 627:
“ * * * * we think it is always important to ascertain, if possible, what it was that primarily motivated the undertaking.”
To the same effect are Carey v City of Oakland, 44 Cal. App. (2d) 503, 508; Fuller v Tucker, 4 Wash. (2d) 426, 430.
The plaintiff here derives no profit whatsoever from the operation of his automobile nor is his association with the riders in any sense one of a business nature wherein the three parties expect to use the car in the furtherance of a business association. Furthermore, the agreement in the case at bar must not be confused with the ordinary agreement wherein the owner of an automobile and his passenger or passengers have voluntarily agreed that one will transport the other to his place of business for the payment of a fixed sum. The agreement here under consideration was in no real sense' of the word entered into voluntarily. The fact is that this agreement is a document dictated by dire necessity and entered into under government regulations, issued upon fully authority and resulting from the requirements of the government in an emergency of enormous significance for the purpose of conserving rubber vital to the military interests of the nation and the transportation of workers engaged in the production of arms and munitions.
Surely, it could not have been the intention of the President or of the governmental agencies which initiated and are promoting the Share-the-Ride program that the person who patriotically offers his car to assist in the conservation of rubber is to be penalized by being required in addition to shoulder the burdens of modern transportation and face all of the-many hazards of the road.
This court is unable to see any real difference in principle between (1) a set of facts wherein the parties agree to share the cost of gasoline and oil consumed on a trip to a night club and (2) wherein the parties in a patriotic effort to carry out governmental regulations seeking to conserve our vital supply of rubber agree to share the cost of gasoline and oil consumed in traveling to and from their respective homes and place of employment. In the first instance no socially useful purpose was served while in the latter the one great purpose with which all of the-peoples living in all of the United. *89 Nations are concerned was being served. If it is deemed unfair or. unjust to hold the owner of the automobile liable under the first set of facts for injuries received by a passenger due to the hazards of transportation to and from a night club it would manifestly be far more unfair and far more unjust to hold the motorist liable under the second set of facts for injuries received by his passenger due to the hazards of transportation oetween their homes and their place of employment in a war industry.
This court can not remain oblivious to the fact that if the arrangement entered into between the parties in the ease at bar were held to create the relationship of carrier and passenger for payment, the risk and burdens which the plaintiff would be called upon to bear would very likely cause him and other owners of automobiles in similar situations, to refuse to agree to carry riders under the Share-the-Ride program as promulgated by the Office of Price Administration in Amendment 16 to the Revised Tire Rationing Regulations and promoted by the Office of Civilian Defense. This would under present conditions result either in complete disintegration of or render utterly ineffective this very important war-time program to save rubber and other critical materials. Millions of tire miles would be wasted- by individual owners of automobiles driving them to and from their work. Such a state of affairs would be of inestimable value to our enemies who by their aggressive and predatory conquests have gained control of more than ninety-five per cent of our crude rubber resources.
The law is not a set of dead and dusty rules, archaic and obsolete. It is a dynamic, living thing which, like the human beings whose lives it orders, must grow and change and adapt itself to changing times and conditions. This is not to say the law should shift and turn with every breeze that blows. There are-certain fundamental and immutable concepts which form and control the great framework of our society and our jurisprudence. These must stand. But within that framework the law must serve the needs of society and an everchanging world.
The facts of the instant case do not bring the plaintiff within the provision of the Private Motor Carriers Act of Ohio Section 614-103 et seq., GC, O. A. G. Opinion No. 3312, October 16, 1934. Nor are there found here the elements of a joint enterprise or adventure. Bloom v Leech, 120 Oh St 237; Janosik v Spang, 18 Abs 72; Eubanks v Kielsmeier, 171 Wash. 484, 18 Pas. (2d) 48, 49.
It is the holding of this court in declaring the legal status of the parties herein under all of the facts and circumstances that where one party enters into an agreement with one or more persons in accordance with Amendment 16 to the Revised Tire Rationing Regulations under which he agrees to transport these persons between their homes and place of employment in a war industry and these persons agree, in return, to reimburse the car owner or operator for their proportionate share of the cost of the gasoline and oil consumed, the relationship between the parties is that of host and guest within the meaning of the Ohio Guest Statute (§6308-6 GC).