[Civ. No. 562. Fourth Appellate District.—December 22, 1931.]

KATHRYN SULLIVAN, Respondent, v. G. L. RICHARDSON, Defendant; W. A. McCORD et al., Appellants.

Kenneth J. Murphy, Lasher B. Gallagher and J. Mc-Croskey for Appellants.

Head, Wellington & Jacobs for Respondent.

FREEMAN, J., *pro tem.*—Plaintiff brought this action to recover damages for injuries she sustained by reason of a collision between two automobiles, one operated by the defendant G. L. Richardson and the other by defendant W. A. McCord on Tustin and Fairhaven Avenues, in Orange County on the thirtieth day of January, 1930. The plaintiff recovered a judgment for $6,075 damages and $109.20 costs, against defendants G. L. Richardson, W. A. McCord, S. H. Woodruff and Dana Point Syndicate, a common-law trust.

The trial was had by the court without a jury. There are two appeals from the judgment, one by defendant W. A. McCord and the other by defendants S. H. Woodruff and Dana Point Syndicate. Defendant G. L. Richardson does not appeal.

Plaintiff alleges that she was a passenger in the automobile operated by defendant McCord at the time of the accident and was injured. Defendants McCord, S. H. Woodruff and Dana Point Syndicate appeared by joint answer and defendant Richardson appeared by separate answer. ■ The defendants Woodruff and Dana Point Syndicate, after the trial had been progressing for several days but before plaintiff rested her case, applied to the court to amend their answer by denying that defendant McCord was the agent of Woodruff and Dana Point Syndicate. The answer of the defendants was verified March 30, 1930. The trial began July 10, 1930, and the application to amend was made July 16, 1930. The amendment from its nature would indicate that plaintiff would have to present additional evidence to establish agency, if possible. The record shows that the attorney for the defendants who asked for the amendment had from June 10th to July 10th to learn the issues. The record does not show that the proposed answer was filed or served. It has been held that the court does not abuse its discretion in denying an amendment when "it does not appear from the transcript that any proposed amendment to the answer was served or presented or that the notice of motion pointed out the precise amendment which plaintiff would ask leave to make or file". (*Martin* v. *Thompson,* 62 Cal. 618, at p. 622 [45 Am. Rep. 663].) From the record here we do not believe the court was in error in denying this proposed amendment or that it was an abuse of discretion. The court sustained the motion for nonsuit as to plaintiff's second cause of action wherein defendants McCord and Richardson were alleged to have been "negligent". No allegation of wilful misconduct or gross negilgence was made.

■ Appellant McCord contends that respondent, according to the evidence, was his "guest" as defined by section 141¾ of the California Vehicle Act (Stats. 1929, p. 1580), as it existed in 1929, which act was in effect at

the time of the accident in question, and that the trial court erred in not expressly finding as a fact and expressly concluding as a matter of law that respondent was a "guest" in the automobile of McCord. The court found that she was riding as a passenger and that the plaintiff gave no compensation to McCord, Woodruff or Dana Point Syndicate for riding in McCord's automobile; that defendant McCord was paid compensation by the defendants Woodruff and Dana Point Syndicate for transporting the plaintiff in his automobile. Her relationship to appellants from a legal standpoint was raised by the pleadings and found by the court in its findings. The plaintiff alleged she was a "passenger" and defendant McCord alleges she was a "guest". This was a question of fact to be submitted to the court from the evidence. The evidence discloses the following:

Plaintiff Kathryn Sullivan testified: "Just state how you happened to get into the automobile. A. This woman approached me and invited me to take this trip; she said she was a representative of—I don't recall what the name was, now, but I suppose it is this Dana Point Syndicate—and I took the trip on her invitation. She said that we would start at nine o'clock the next morning; to be down in the lobby, and I was there and entered this car and we drove out of Los Angeles . . . Q. Did you agree to pay this lady or Col. McCord or anybody else for the ride? A. No. . . ."

Defendant McCord testified as follows: "Q. You have testified that Mrs. Sullivan was riding in your automobile on the date of the accident, is that correct? A. Yes, sir. . . . Mr. Gallagher: No; where was it she got in? The Court: She may answer. A. San Carlos hotel, the corner of Fifth street and Olive, Los Angeles. Q. Did you know her before that time? A. No, sir. Q. Did you know her at that time as Mrs. Sullivan A. At the time she was— of the accident, you mean? Q. At the time she got in your automobile? A. Only by introduction, that she had been introduced as 'Mrs. Sullivan'. Q. Did you personally invite her to get into your automobile? A. No, sir—Col. Wellington: That is objected to as incompetent, immaterial and irrelevant whether he 'personally invited her to get into the automobile. The Court: Overruled. A. No, sir. Q. What was your destination? A. Dana Point. Q. And were you

to bring Mrs. Sullivan back to that hotel that same day? Yes, sir. . . . Q. With whom did you have the arrangement to bring her back to that particular hotel? A. It has always been the custom to bring them back. Q. You were simply following out a custom, is that it? A. Yes, sir. Q. And no understanding with Mrs. Sullivan? A. I had no personal understanding; it was the assumption that we would bring them back; in case we took them down we would bring them back. . . . ''

James W. Bennett, auditor for Dana Point Syndicate, testified as follows: ''Q. Is there any oral contract between the Dana Point Syndicate and S. H. Woodruff, and Mr. McCord, by which he is to be paid for the transporting of individuals from Pasadena and vicinity to Dana Point? A. No, because he wasn't paid for transporting individuals. There is an oral contract between the employer and Col. McCord calling for his reimbursement for gasoline and oil expense in making trips with prospective purchasers to Dana Point. Q. Is he paid a rate per passenger? A. No. Q. He has no payment of so much per passenger? A'. No; simply the repayment of gasoline. Q. And automobile expense? A. A fixed allowance. Q. Is that based on the number of passengers he carries? A. No, sir, the number of the trips. Mr. Gallagher: Did the witness say 'a fixed allowance?' Witness: Yes, sir. Mr. Gallagher: Of so much per trip? Witness: Yes, sir. Col. Wellington: You say that it is so much per trip, is that right? A. Yes, sir. Q. It is based on the number of trips he makes? A. Yes, sir. Q. Irrespective of the number of passengers he carries? A. Yes. What is that agreement? A. He is allowed three dollars for every trip he makes with prospective purchasers to the property and he takes them back. Q. That covers the taking of the person from their hotel or place where they are picked up to Dana Point and return,—is that true? A. Yes. Q. And it is three dollars irrespective of the number he carries? A. Yes, sir. I think that is not the only consideration. Q. Is he paid other consideration than that for transporting them? A. If a sale results. Q. If a sale results? A. Yes. Q. And that it is contingent upon a sale result, is that right? A. Yes; Yes.''

■ Appellant McCord contends that he was entitled as a matter of law from the evidence to a finding that respondent was a guest within the meaning of the law. The court found she was a "passenger". This is an express finding from which Mrs. Sullivan's legal relation to defendants Woodruff, McCord and the Dana Point Syndicate was established. Her relationship of "passenger" would be different from that of a mere "guest". Under the law she could not be held to occupy both relationships of "guest" and "passenger" at the same time and under the same circumstances. ■ To be a passenger does not necessarily imply that there should be payment in money for transporation. (*Champagne* v. *A. Hamburger & Sons,* 169 Cal. 683, 692 [147 Pac. 954].) It may be by contract, either express or implied, and the contract need not be between the carrier and passenger, but may be between the carrier and a third person for the passenger. (*Orr and Lanning* v. *Boockholdt,* 10 Ala. App. 331 [65 South. 430, 431].) "It is enough that there is any consideration for the carriage. The person admitted to his vehicle by a common carrier for the purpose of carriage for any compensation is a passenger." (*Walther* v. *Southern Pac. Co.,* 159 Cal. 769, 772 [37 L. R. A. (N. S.) 235, 116 Pac. 51, 53] ; *Champagne* v. *A. Hamburger & Sons, supra; Crawford* v. *Foster,* 110 Cal. App. 81 [293 Pac. 841].) The foregoing evidence is sufficient for the trial court to find that respondent was a passenger.

Respondent here was not a licensee or trespasser as contended by appellants. She was in the automobile by the consent of the driver, McCord, and for a compensation paid by defendants Woodruff and Dana Point Syndicate. McCord and defendants Woodruff and Dana Point Syndicate were private carriers for hire. In the case of *The New World* v. *King,* 16 How. (57 U. S.) 469, 474 [14 L. Ed. 1019, see, also, Rose's U. S. Notes], it was held that when persons undertake to convey others as passengers for pay by automobile,

" 'Public policy and safety require that they should be held to the greatest possible care and diligence. And whether the consideration for such transportation be pecuniary or otherwise, the personal safety of passengers should

not be left to the sport of chance or the negligence of careless agents. Any negligence, in such cases, may well deserve the epithet of gross.' . . .

"The theory that there are three degrees of negligence, described by terms slight, ordinary, and gross, has been introduced into the common law from some of the commentators of the Roman law. It may be doubted if these terms can be usefully applied in practice. Their meaning is not fixed, or capable of being so. One degree, thus described, not only may be confounded with another, but it is quite impracticable exactly to distinguish them. Their signification necessarily varies according to circumstances, to whose influence the courts have been forced to yield, until there are so many real exceptions that the rules themselves can scarcely be said to have a general operation. . . .

" 'How much care will, in a given case, relieve a party from the imputation of gross negligence, or what omission will amount to the charge, is necessarily a question of fact, depending on a great variety of circumstances which the law cannot exactly define.' "

In the case at bar the question as to the degree of negligence was a fact to be determined by the court, and it having found that "the defendant W. A. McCord operated his said automobile in which plaintiff was then and there riding, carelessly and negligently and with willful misconduct and gross negligence while then and there approaching and in said intersection", it follows that this must stand if supported by the evidence. A review of the testimony establishes negligence in that McCord was greatly exceeding the speed limit in a 15-mile intersection when he was traveling 50 miles per hour and a little to his left of the center of the highway, and if he was not guilty of gross negligence or wanton or wilful neglect, he was, under the evidence and findings at least guilty of negligence. In *Merrill* v. *Pacific Transfer Co.*, 131 Cal. 582 [63 Pac. 915, 917], it was said: "But the question whether or not the common carrier was guilty of gross negligence was, in the first instance, one for the jury to pass upon under proper instructions from the trial court, and this court may not be asked to usurp the functions of the jury and decide a question which has never been submitted to them."

■ It is contended by appellant that the court erred in finding, as above quoted, that McCord was guilty of ''willful misconduct'' for the reason that there was no evidence to show there was an element of knowledge, wilfulness or wantonness. McCord testified he had been traveling this road on an average of ''three and four times a week, for two years'', and ''knew this intersection''. This would imply knowledge on his part, of this intersection and its condition sufficient to warn him of possible danger at this corner. But as we have found that the plaintiff was a ''passenger'', under sufficient evidence, it was only necessary for her to prove that defendants McCord and Richardson did not use ordinary care, or were negligent, and that such negligence on their part was the proximate cause of the accident and resulting injuries complained of by plaintiff, in order for her to recover. Gross negligence includes other degrees of negligence. The evidence discloses that McCord was traveling south on Tustin Avenue with respondent as a passenger; defendant Richardson was traveling west on Fairhaven Avenue. At the intersection of Tustin and Fairhaven Avenues, there is an orange grove with large trees and a windbreak on and along both avenues. On the northeast corner of the intersection were trees which extended about 25 feet toward the pavement and approximately 10 feet from the easterly edge of the pavement of Tustin Avenue, and were 15 or 16 feet from the gutter. One witness stated that the windbreak came flush with the highway. There was a stop sign about 30 feet from the center of the paved roads on the north side of Fairhaven Avenue. Defendant Richardson testified that he could not see the traffic on Tustin to his left or right from the point where he stopped, due to these obstructions. This would make this point what is commonly known as a ''blind intersection'' to persons driving south on Tustin and west on Fairhaven Avenues. ■ An intersection is deemed to be ''blind'' when at any time during the last 100 feet of his approach to such intersection the driver of a vehicle does not have a clear and uninterrupted view of such intersection and of the traffic upon all of the highways entering such intersection for a distance of 200 feet from such intersection. This being an intersection at which the speed would be limited to 15 miles per hour, under the statute an excessive speed of 50 miles per hour, as

found by the court, was negligence *per se,* as a matter of law.

In the case of *Skaggs* v. *Wiley,* 108 Cal. App. 429, at page 433 [292 Pac. 132, 133], the court has held that "where the view is thus obstructed, a failure to observe the statutory requirement as to speed will, if the same proximately causes or contributes to the injury complained of, constitute negligence as a matter of law, the principle that a violation of the statute is negligence *per se* being subject to the limitation that the act or omission must proximately cause or contribute to the injury". There was evidence by witness Bronson, who was riding with defendant McCord at the time of the accident as follows: "Q. And what was the approximate speed of this car as it came to this intersection on that date? . . . A. Well, I should think it was between forty and fifty miles an hour. Q. Did the car slow up at or before the accident? A. I didn't notice it slow up." Whether or not this was negligence or wilful misconduct and gross negligence on the part of McCord was a question of fact for the determination of the trial court, from the evidence. The evidence before the court, together with the fact that McCord knew this corner and its condition, was sufficient for the court to determine the degree of negligence. The car in which defendant Richardson was riding and driving west on Fairview Avenue came in contact with the McCord car about the center of Tustin Avenue and a little to the left of the center line thereof. Defendant Richardson testified that he looked to the left as he entered the intersection but did not look to his right; that while he was looking to his left his car was struck by the McCord car. On cross-examination he stated:

"Q. Now, is it not a fact that in that written statement which was presented to you at that time in court there appeared the statement: 'I didn't stop at the boulevard stop sign, but I was rolling very slowly in my car in neutral.' A. I believe that is correct. Q. Yes. In other words, from the time your car entered the intersection, the main highway, up until the time the collision occurred you had your face pointed towards the south and your eyes in that direction looking for traffic, didn't you? A. Yes. Q. You weren't looking down at the surface of the pavement in front of your car, were you? A. No. Q. Now you stated on

direct examination that you had driven out on to the main highway about fifteen feet, according to your recollection, at the time the accident happened? A. That is correct. Q. You knew that that was the main highway, didn't you? A. Yes. Q. You intended to turn to the right, you say? A. Absolutely. . . . Q. Well, disregarding that, now, for a moment, you were fully fifteen feet from the easterly edge of Tustin avenue, out into the intersection, weren't you, when the accident occurred? A. As near as I can figure it, yes. Q. At no time did you look to the right? A. I had no opportunity. Q. I didn't ask what your opportunities were; I asked you what you did. At no time did you look to the right? A. No. . . . Had your car progressed out beyond the center of Tustin avenue. A. It hadn't. Q. How far east of the center had your—what point east of the center had your car reached,—about how many feet from the center line? A. Within two or three feet. Q. Now at the time of the impact was your car traveling or standing still? A. Well, you might say it just was barely moving; I kind of pulled up to a stop,—barely moving, I think at the time of the impact, just kind of rocked there a little. . . . A. The right front portion of my car was damaged, the fender, the wheel and the axle, the radiator shell, and one lamp.''

It will be noted that defendant Richardson also knew the condition of this intersection; that he had partly crossed the street and was within two feet of the center line of Tustin Avenue and had not up to that time looked to his right. This was sufficient for the court to find that he was guilty of neglect to use proper care, because he had traveled nearly to the center without looking to see if there were any automobiles coming south on Tustin Avenue. He had a clear view up Tustin Avenue from the time he passed the windbreak or trees along Tustin and Fairhaven Avenues. If he was going as slow as he stated, he had ample time to look both ways and could have avoided the collision, and if McCord had traveled on his right side of the road at a lesser rate of speed and with proper care, the accident would not have happened.

The case of *Royal Finance Co. of California* v. *Miller*, 47 Fed. (2d) 24, 26, is very similar to the case at bar. There a real estate firm was carrying prospective purchasers

to and from its tract in San Diego County by automobile. The driver of the automobile was employed by the real estate firm. He took two ladies to the tract in his automobile and an accident occurred. He was paid $50 a week to give lectures at the tract, and at times carried customers when requested to do so by the real estate firm. He received no pay from the customers. The finance company denied that the driver was its agent. There were objections to certain instructions. The court, in commenting on them, stated in part: "But if they took her out in the regular course of business in carrying prospects to that place, and accepted her as such, and she reciprocally had in her mind the idea that she might become an investor as a result of this transportation and observation, then the company undertook to get her out there and return her safely. She relinquished none of her rights to a safe conveyance whatever, took none of the responsibility in her own hands, and under those circumstances it requires, it seems to the court, a rather higher degree of care in transportation than it would if she were going with a friend in some pleasure ride, as a guest of the friend. Undoubtedly it must be the law, we think, under circumstances as peculiar as this, that one who rides in the interest of another, and as a result of the solicitation of the transporter, is something more than a mere guest." The court cited the case of *Champagne* v. *A. Hamburger & Sons, supra,* on the point of common carrier and degree of care. But the court, in the finance company case, *supra,* states: "By analogy it would seem clear that where a real estate firm was engaged in a selling campaign, and as a part of the sales scheme was engaged in transporting customers or prospects to and from the real estate it was endeavoring to sell, it was a carrier for reward within the meaning of the sections of the California Code . . . "

The sections of the Civil Code applicable hereto are as follows:

"Sec. 2096. A carrier of persons without reward must use ordinary care and diligence for their safe carriage."

"Sec. 2100. A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill."

"Section 2104. A carrier of persons for reward must travel at a reasonable rate of speed, and without any unreasonable delay, or deviation from his proper route."

The court, in the finance company case, *supra,* further stated: " . . . as the undisputed facts indicate, that she was a passenger for hire, for it is undoubtedly true that a higher degree of care was required in such case than the case of a guest, and that that higher degree of care was greater than the care denominated as reasonable or ordinary care."

In the case at bar the evidence discloses that there was a consideration for the plaintiff's ride in McCord's automobile. She was therefore a passenger in McCord's automobile for hire and for which compensation was given. The object of the trip to Dana Point was a business enterprise conducted by defendants Woodruff and Dana Point Syndicate by which they and McCord received an indirect benefit. McCord was receiving pay for his expense, and in case of the sale of property to a passenger, he was to obtain a further consideration from defendants Woodruff and Dana Point Syndicate. He was acting for Woodruff and Dana Point Syndicate and within the scope of his employment at the time of the accident. He was engaged in a business enterprise for the benefit of McCord, Woodruff and the syndicate. Upon the evidence the court had the right to determine the degree of care and negligence; and as held by the trial court McCord was guilty of wilful misconduct and gross negligence and defendant Richardson was also guilty of negligence. The accident was proximately caused by the joint negligence of both these defendants and they are liable for the injuries sustained by plaintiff, as set forth in the findings.

We therefore hold that there was evidence upon which the trial court could determine the degree of negligence and the degree of care and that it was sufficient to support the findings in that regard. We further hold that McCord was the agent of Woodruff and Dana Point Syndicate; that respondent was a passenger for hire; that her injuries were the result of their joint negligence; and that such negligence was the proximate cause of the injuries sustained. Such negligence, whether gross or otherwise, as disclosed by the evidence, was sufficient to support the findings and judgment.

The judgment is affirmed.

BARNARD, J., Concurring.—In the first cause of action set up in the complaint the plaintiff alleged, among other things, that she was a passenger in an automobile driven by the defendant McCord and that she suffered injuries through the gross negligence and wilful misconduct of this defendant. In a second cause of action, she alleged that she was so riding as a passenger and that she suffered injuries through the negligence of McCord. At the close of the plaintiff's evidence the court granted a motion for a nonsuit as to the second cause of action.

While the order of nonsuit as to the second cause of action was erroneously entered, no appeal has been taken from the same and the error is immaterial, since the first cause of action sufficiently alleged that the plaintiff was a passenger, and that she suffered the injuries complained of through the negligence of the defendant McCord. Gross negligence necessarily includes negligence, and the fact that the allegation went further than was needed and alleged gross negligence resulted in no harm, and may be treated as surplusage.

As shown in the preceding opinion, the evidence is ample to sustain the finding that the plaintiff was a passenger and not a guest in the automobile in which she was riding (*Crawford* v. *Foster*, 110 Cal. App. 81 [293 Pac. 841]; *Smith* v. *Fall River etc. School Dist. et al.*, 118 Cal. App. 673 [5 Pac. (2d) 930]). The evidence is also ample to sustain the finding that the driver of the car in which the plaintiff was riding was guilty of negligence, and that this negligence was, jointly with the negligence of another defendant, the proximate cause of the injuries complained of. We concur in the conclusion reached in the preceding opinion.

The judgment appealed from is affirmed.

Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 19, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 18, 1932.