A. E. LATHAM, ADMINISTRATOR (ESTATE OF WALLACE I. LATHAM) *vs.* PHILIP Z. HANKEY, ADMINISTRATOR (ESTATE OF CHARLES A. MERRILL).

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 5th—decided May 23d, 1933.

*George C. Morgan,* for the appellant (defendant).

*Arthur T. Keefe* and *Leon J. Beisheim,* for the appellee (plaintiff).

HAINES, J. The record shows little or no conflict in the evidence. Giving it the most favorable construction in support of the verdict, the jury could reasonably have found that the plaintiff's decedent, Latham, was seated at the right of the defendant's decedent, Merrill, in an automobile driven by the latter in a general easterly direction toward New London, on the evening of November 10th, 1931, on the Boston Post Road so-called. The night was clear and the roadway dry, and it was familiar to Merrill who had driven over it often. At some time before ten-fifteen o'clock the car, on a steep down grade, approached a curve in the roadway to the left, commonly known as Dead Man's

Curve, in the town of Old Lyme near the boundary line of the town of East Lyme. About two hundred feet before the curve begins, was a highway sign beside the road indicating there was a curve ahead. A second sign directed drivers to keep to the right and another indicated proper speed. About sixty feet before the curve began, brake marks well within the right edge of the concrete were found after the accident, which continued for ten feet, and then skid marks led off the concrete onto the shoulder of the road. At this point the shoulder was about six feet wide and the concrete roadway was about twenty-four and a half feet.

After leaving the concrete, the tire marks continued on the shoulder for fifty feet to the end of a highway fence, and the fence was demolished from that point for about fifty-seven feet, then the tire marks turned sharply to the right over an embankment and across an abandoned roadway, to the rear wheels of the Merrill car which stood upright at this spot when officers arrived. Two state police officers from the Westbrook barracks went to the scene in response to a telephone call by someone whose identity is not disclosed in the record, which was received about ten-fifteen p. m., and they reached the scene within fifteen or twenty minutes. They found two other officers already there from the New London barracks. When the Westbrook officers arrived they found the car in the position stated, with the dead body of Merrill in the driver's seat and the body of Latham sitting beside him. The right front tire was off, but neither that nor the other tires were deflated. The right front and side of the car was damaged. There is no evidence as to the condition of the brakes. A long plank which had been a part of the highway fence had entered the windshield striking Latham in the neck, severing his head, which was found in the tonneau, and the plank protruded from

the rear of the car. Another plank had also penetrated the windshield and passed over the shoulder of Merrill, pinning his head and body to the door by his side.

The death of Latham was clearly the result of being struck by the plank, but the record furnishes no evidence whatever as to whether there was any observable physical injury to Merrill. It is purely conjectural, whether his death was caused by the shock of the collision with the fence, or the pressure of the plank which was found resting against his body and head, or whether death came to him from some natural cause, such as a heart attack while driving at or about the time the brakes were momentarily applied and then released, allowing the car to run down the incline out of control. Equally it is a matter of pure conjecture whether the speed was excessive when the brakes were applied, though the physical effects of the collision with the fence justify a conclusion that the speed, after the fifty-foot run with the brakes off and car out of control, down along the shoulder of the road, had become very high when the impact occurred. Nor can it be known why the brakes were applied while the car was in its proper place on the concrete surface of the roadway. If it be inferred that an excessive speed had been reached and called for the application of the brakes, it could with as much probability be inferred that something suddenly happened to Merrill himself or to some part of the mechanism of the car, or that some animal or other obstruction suddenly appeared, or that a rapidly driven car from the other direction was approaching swinging wide, too far to its left.

The record is equally bare of any evidence as to the time the accident happened, save that the first notice came to the Westbrook barracks about ten-fifteen p. m. Nor does the record show that there were any eyewitnesses of the accident, or who, if anyone, had been

there, or what had been done before any officer arrived.

The complaint was in two counts, the first alleging Latham was riding as the "servant or employee" of Merrill, and the second that he was Merrill's "guest." The jury gave a defendant's verdict on the first count and a plaintiff's verdict on the second count. The present appeal questions the validity of the refusal of the trial court to set aside the plaintiff's verdict, and the material inquiry is whether the evidence furnishes a legitimate basis for the conclusion that the injury and death of Latham was proximately caused by the heedless and reckless conduct of Merrill in disregard of Latham's rights under the so-called guest statute, the pertinent portion of which reads as follows: "No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of such owner or operator or caused by his heedlessness or his reckless disregard of the rights of others." General Statutes, § 1628.

This statute defines the rights of one who is a guest, a gratuitous passenger in the car, and does not include one who is being transported for pay, or one who is being transported for the mutual benefit of himself and the operator. *Kruy* v. *Smith*, 108 Conn. 628, 630, 144 Atl. 304. By the settled construction of this statute, the liability of the operator is limited to two classes of cases: first, where he is guilty of intentional misconduct, and second, where he acted in heedless and reckless disregard of the rights of the passenger, and this contemplates something more than mere negligence—the failure to exercise the care of a reasonably prudent person under the circumstances. *Ascher* v. *Friedman, Inc.*, 110 Conn. 1, 2, 147 Atl. 263.

The relation of Latham to Merrill at the time of the accident cannot be known from the evidence. They were known to be friends and there is evidence that they rode together not infrequently; that Latham had previously done some painting for Merrill's mother at Crescent Beach, where both she and Merrill had interests, and in the direction of which they were going, though there was no evidence that Latham had previously been employed by Merrill himself. In the tonneau of the car, after the accident, were found some turpentine and paint mixtures, overalls and an old coat belonging to Latham. There was no evidence anywhere of intoxicants and none as to the purpose of the trip other than that furnished by the circumstances detailed.

It is not and of course cannot be claimed on this record that Merrill was guilty of intentional misconduct and the verdict which the jury rendered for the plaintiff must be supported, if at all, as a reasonable conclusion based upon the evidence, that the death of Latham was the proximate result of such conduct by Merrill that it could properly be characterized as heedless and reckless and in disregard of the rights of Latham—something more than mere negligence. Giving the plaintiff the benefit of a serious doubt, whether at the time of the accident Latham's relation to Merrill was that of a guest, we are unable to see how his death could be reasonably found to have in fact been caused by improper conduct or negligence on the part of Merrill, to say nothing of the conclusion that his conduct was heedless and reckless and in disregard of Latham's rights.

Drawing logical deductions and making reasonable inferences from facts in evidence, whether that evidence be oral or circumstantial, is a recognized and proper procedure in determining the rights and obliga-

tions of litigants, but to be logical and reasonable they must rest upon some basis of definite facts, and any conclusion reached without such evidential basis is a mere surmise or guess. The gruesome character of the death of the plaintiff's decedent naturally tended to create sympathy and a leaning toward a plaintiff's verdict, but for the reasons given we are unable to find in the evidence a sufficient basis for it, and the motion to set it aside should have been granted.

In this court a certificate by the official stenographer was offered by counsel, making a correction in the original transcript of the evidence. We consider it the duty as well as the privilege of the stenographer to make such correction where accuracy requires. In conformity with our procedure as to transcripts of evidence given in the trial court, however, we deem it the better practice to submit the correction to the trial judge and obtain his certificate in addition to that of the stenographer.

There is error and a new trial is ordered.

In this opinion the other judges concurred.