A. A. CLENDENNING, Administrator, Appellant, v. DWIGHT
SIMERMAN, Appellee.

No. 43134.

NOVEMBER 12, 1935.

Paul H. Williams, Ralph N. Lynch, and C. G. Updegraff,
for appellant.

Walter K. Stewart, and F. M. Beatty, for appellee.

MITCHELL, J.—Oren Palmer was engaged in business in
Keota, Iowa, as a wholesale distributor of beer. For several
months prior to February 3, 1934, Dwight Simerman, the defend-

ant, had been employed by Palmer. His job consisted of delivering beer and keeping the books. He worked seven days a week, from seven in the morning until six at night. Palmer had a daughter, Carrie, who lived at his home, and who was employed as a telephone operator in Keota. On the 2d of February she talked to her father about making a trip to Des Moines, as she desired to do some shopping. That evening Carrie Palmer talked to Margaret Clendenning about making the trip with her. On the morning of February 3d Palmer talked to Simerman relative to taking the trip to Des Moines; said that he could not get away and that he wanted Simerman to take his daughter and Miss Clendenning to Des Moines so that Miss Palmer could do some shopping. Miss Clendenning was going to Des Moines for the purpose of trying to secure a position. Palmer told Simerman to fill up the gas tank and charge it to him, and this was done. At about 11 or 11:30 that morning Simerman met Miss Palmer and Miss Clendenning and a young man by the name of Donald Holmes at the filling station. They all got into Simerman's Ford coupe and started for Des Moines. On the way to Des Moines, at the request of Mr. Palmer they delivered a keg of beer to a Mr. Keister at Delta. Around 2 o'clock they arrived in Des Moines and Carrie Palmer got out at Younker's corner. Miss Clendenning and Donald Holmes left the car together. By arrangement Simerman met Carrie Palmer at the corner of the Katz Drug Store between six and six thirty, after she had finished shopping. Later on they met Donald Holmes and Margaret Clendenning, and the four of them had dinner. Some time between seven thirty and nine that evening the party started back home. Simerman was driving. Next to him, to his right, sat Miss Palmer, and next to her was Donald Holmes, upon whose lap Miss Clendenning was sitting. They drove out on Grand avenue to the west entrance of the Fair Grounds and then turned north. Then they turned east on University, on either Highway No. 63 or 163, the regular road to Oskaloosa. The lights on the Ford coupe were burning and the car was being driven at approximately twenty-five miles per hour. There were street lights on East University. A truck belonging to John Knapp, used by him in hauling coal for the Keating Coal Company, had broken down about fifty feet east of Thirty-Third street, and the driver was forced to park the truck and secure help. The bed of the truck was seven feet wide and the truck was parked so that about one

foot of the bed of the truck was over the south curb of University, extending into the street. The taillight on the truck was burning. As the Ford coupe was being driven along the street, the truck was visible for more than a hundred feet, but somehow or other the driver of the coupe did not swing out far enough and that part of the box of the truck that was extending out into the street collided with the coupe, seriously injuring Miss Clendenning, who died later as a result of said collision.

Plaintiff was duly appointed administrator of the estate of Margaret Clendenning and commenced this action to recover damages for the wrongful death of his intestate, resulting from injuries sustained while said intestate was riding in an automobile owned and driven by the defendant. Defendant answered, admitting that deceased died as a result of injuries sustained on or about the 3d day of February, 1934, as a result of an automobile collision occurring while said deceased was riding in an automobile owned and driven by the defendant, but specifically denied that the plaintiff under the law of this state was entitled to recover from the defendant in any amount. At the close of plaintiff's testimony the court directed a verdict for the defendant, and judgment for costs was entered. The theory of the motion by defendant was that decedent was a guest and could not recover for negligence.

The plaintiff, being dissatisfied with the ruling of the lower court, has appealed to this court.

The only question involved in this appeal is the status of appellant's decedent while riding in the appellee's automobile at the time of the accident. Appellant's cause of action being predicated upon mere negligence, the burden was upon him to prove that his decedent's status while riding in the appellee's car as a passenger, was not such a one that would exclude a recovery for mere negligence as provided in section 5026-b1 of the 1931 Code of Iowa.

It must be kept in mind that this action is based upon negligence. It is the claim of the appellant that his decedent was not a guest in the car of the appellee, and that as she was not a guest he is entitled to recover if he proves negligence on the part of the appellee and freedom from contributory negligence on the part of his decedent.

Let us briefly review the facts in this case. Oren Palmer, the father of Carrie Palmer. was appellee's employer. Appellee

had worked for him for several months prior to the accident. He worked every day in the week and his hours were from seven in the morning until six at night. The duties he was to perform consisted of delivering beer in trucks owned by Palmer whenever there were deliveries to be made, and the rest of the time he was busy keeping the books. Carrie Palmer desired to go to Des Moines to do some shopping. They lived at Keota, in Keokuk county, some distance from Des Moines. On the morning of February 2d Carrie Palmer inquired of her father if he could take her to Des Moines, and that evening she talked with Margaret Clendenning, who was a friend of hers, saying she was going to make the trip to Des Moines and asked Miss Clendenning to go with her. Miss Palmer told her father that night that she had talked to Margaret Clendenning about going with her, and the father said he had no objections to that. On the next morning, February 3d, Palmer talked to his employee, the appellee, about making the trip to Des Moines, and told him that his daughter desired to do some shopping there and that Miss Clendenning was going with her. Palmer told the appellee to fill the gas tank, which he did, and Palmer paid for the gas. According to Miss Palmer's story, she did not know that the appellee was going to take them to Des Moines until that morning. Arrangements were made to meet her at the gas station, and later on they met Miss Clendenning and Donald Holmes. How Donald Holmes happened to go along on the trip does not appear in the record, except that he was a friend of Margaret Clendenning, Carrie Palmer, and Dwight Simerman. They took the appellee's car, a Ford coupe, and into the front seat these four people crowded. Shortly before they left, Palmer told appellee that he had a keg of beer he wanted delivered at Delta, which is only a short distance from Keota on the way to Des Moines. The beer was placed in the back end of the car and the journey to Des Moines was started. At Delta they stopped and delivered the beer and Simerman collected the amount due. They arrived in Des Moines about two o'clock. Miss Palmer got out at the Younker corner, and Miss Clendenning and Holmes got out together a little further on. Between Miss Palmer and the appellee, arrangements were made to meet at six o'clock at the Katz Drug Store corner. They did meet at that time, and later on they met Miss Clendenning and Donald Holmes, and the four of them had dinner together. Somewhere

between seven thirty and nine o'clock they started on the journey home, the accident occurring between eight and nine o'clock that evening.

The sole question is whether or not Miss Clendenning was a guest. If she was a guest, then, under the statutes of this state, her estate is not entitled to recover and the lower court was right in directing a verdict. The appellant sues upon the theory that she was not a guest and bottoms his right to recover upon the negligence of the appellee.

This court, speaking through Justice Kindig, in the case of Knutson v. Lurie, reported in 217 Iowa 192, on page 195, 251 N. W. 147, 149, said:

"One may be a passenger in an automobile without being a guest, a mere passenger by invitation, or a passenger for hire in the legal sense of the word. There are, in fact, a multitude of persons riding in cars daily who are not guests, passengers by mere invitation, or passengers for hire within the legal meaning of that term. A person riding in an automobile may be there because of the relationship of master and servant existing between him and the owner. In other instances, the rider in an automobile may be there (without the relationship of master and servant) for the definite and tangible benefit of the owner or operator; or such person may be in the automobile (without the relationship of master and servant) for the mutual, definite, and tangible benefit of the owner or operator on the one hand, and of himself on the other. ˙ Kruy v. Smith et ux., 108 Conn. 628, 144 A. 304; Gage v. Chapin Motors, Inc., 115 Conn. 546, 162 A. 17; Latham v. Hankey, 117 Conn. 5, 166 A. 400; Russell v. Parlee, 115 Conn. 687, 163 A. 404; Smith v. Fall River Joint Union High School District et al., 118 Cal. App. 673, 5 P. (2d) 930; Sullivan v. Richardson, 119 Cal. App. 367, 6 P. (2d) 567; Sumner v. Edmunds et al. [130 Cal. App. 770], 21 P. (2d) 159; Royal Finance Co. of California v. Miller, 47 F. (2d) 24 (C. C. A. 9th. Circuit); Labatte v. Lavallee, 258 Mass. 527, 155 N. E. 433; Lyttle v. Monto, 248 Mass. 340, 142 N. E. 795; Jackson v. Queen, 257 Mass. 515, 154 N. E. 78; Loftus v. Pelletier, 223 Mass. 63, 111 N. E. 712. See, also, Bookhart v. Greenlease-Lied Motor Co., 215 Iowa 8, 244 N. W. 721, 82 A. L. R. 1359; Crawford v. Foster, 110 Cal. App. 81, 293 P. 841.

"When the legislature of Iowa used the phrase in section

5026-b1, before quoted, to wit, 'as a guest or by invitation and not for hire', its evident attempt was to exclude recovery by a guest or a mere invitee except for the reckless operation of the automobile. The use of the phrase 'and not for hire' was merely to aid in the understanding of the meaning of the word 'guest' and of the phrase 'by invitation'. By using those words and phrases, the legislature did not intend to include all persons who might from time to time ride in an automobile, as before explained. It is evident that the intent of the legislature, therefore, was to recognize nongratuitous riders in an automobile, as well as a guest and a mere invitee. Likewise, it is apparent that the legislature intended to distinguish between 'passenger for hire', as that term is used in law, and other nongratuitous riders in an automobile. Through the legislation, a safeguard against the prevalent claims for damages by guests or mere invitees was placed around the owner and operator of the car. Although, in the transportation of the guest or the mere invitee, no fare of any kind was asked by the owner or operator, yet the guest and invitee, without gratitude, frequently commence suit on every conceivable charge of negligence. * * *

"Many different statutes relating to this matter have been passed in the several states. No one of them is exactly like the other. That situation naturally would arise because of the different personnel of the various state legislatures. So, the interpretation placed upon a given statute by the court of that state might not apply when considering the statute in another state. Some state courts have placed the deciding point, in determining whether a passenger is a guest, on whether there was consideration for the transportation. Crawford v. Foster, 110 Cal. App. 81, 293 P. 841, supra. On the other hand, other courts, as before indicated, have placed the criterion on other grounds. These grounds are: First, that the relationship of master and servant exists between the passenger and the owner or operator of the car; or, second, that the passenger (without the relationship of master and servant) became such for the benefit of the operator or owner of the car; and/or, third, that the passenger (without the relationship of master and servant) is conveyed in the car for the mutual benefit of the operator on the one hand, and of the passenger on the other. Under any one of these three grounds for determining such relationship, the rider in the car is a nongratuitous passenger. Un-

doubtedly it is the theory of the cases that when the relationship of master and servant exists between the passenger and the operator of the car, the transportation is for the mutual benefit of both. Kruy v. Smith et ux., 108 Conn. 628, 144 A. 304, supra; Gage v. Chapin Motors, Inc., 115 Conn. 546, 162 A. 17, supra; Latham v. Hankey, 117 Conn. 5, 166 A. 400, supra; Russell v. Parlee, 115 Conn. 687, 163 A. 404, supra; Royal Finance Co. of California v. Miller (C. C. A.) 47 F. (2d) 24, supra; Labatte v. Lavallee, 258 Mass. 527, 155 N. E. 433, supra; Lyttle v. Monto, 248 Mass. 340, 142 N. E. 795, supra; Jackson v. Queen, 257 Mass. 515, 154 N. E. 78, supra; Loftus vs. Pelletier, 223 Mass. 63, 111 N. E. 712, supra. See, also, Smith v. Fall River Joint Union High School District et al., 118 Cal. App. 673, 5 P. (2d) 930, supra; Sullivan v. Richardson, 119 Cal. App. 367, 6 P. (2d) 567, supra; Sumner v. Edmunds et al. [130 Cal. App. 770], 21 P. (2d) 159, supra.

''The Connecticut court said in Russell v. Parlee, 115 Conn. 687, 163 A. 404, reading on page 406, supra: 'It may well have appeared to the legislature that there were sound social reasons for denying a recovery for negligence against one who was transporting in his automobile a member of his family or a social guest or casual invitee, in an action brought by the recipient of his hospitality, which would not exist where a *mutual benefit* growing out of the relationship of the parties was contemplated, even though the benefit to be received was incidental, and not a technical legal benefit which the parties by their contract had bargained for as the consideration for the transportation. Bearing in mind the objects which it may be assumed were within the legislative purpose in the enactment of this legislation, we are not prepared to say that the legislature intended to deny a right of recovery for negligence to a passenger in an automobile unless there was, by bargain between the parties, a consideration for the transportation moving to the owner or operator. The person transported is not a guest within the meaning of the statute if the transportation is for the *mutual benefit of both parties,* and in determining whether it was for their mutual benefit the relationship between the parties to which it was an incident may be considered. * * * The relationship must be definite and the benefit tangible, * * * but it is not required that the relationship be such that the

746

benefit accruing is the consideration for the transportation agreed upon by the parties.' ''

The above-cited case provides the criterion for determining whether a passenger is a nongratuitous one, who may recover. upon the showing of mere negligence, and divides such passengers into the following groups: First, where the relationship of master and servant exists between the passenger and the owner or operator of the car; second, where the passenger becomes such for the benefit of the operator or owner of the car; third, where the passenger is conveyed in the car for the mutual benefit of the operator or the owner, on one hand, and the passenger, on the other.

The first relationship, that of master and servant, need not be given consideration, inasmuch as there is no claim on the part of the appellant that that relationship existed between the appellant's decedent and the owner or operator of the car, the appellee.

The second proposition is: ''Did Miss Clendenning become a passenger for the benefit of the operator or owner of the car?'' What benefit did the appellee obtain from the transportation of Miss Clendenning? Counsel for appellant has grouped certain alleged benefits which it is claimed the appellee received from the transportation of Miss Clendenning. Let us examine them.

First, they say that appellee was paid for the trip, in that he received his salary, which was paid on a weekly basis, covering the afternoon during which he was away from his employment while on the trip to Des Moines. It was admitted by Palmer, the employer of appellee, that he never deducted from the salary of this employee or any other of his employees for an occasional Saturday afternoon off; that he paid them straight time though he would frequently allow this employee or any other employee a half day off. The record clearly established that appellee would have drawn his full week's salary just as he did had he remained in Keota and whether he worked or not. That the alleged benefit could not have accrued because of Miss Clendenning is apparent from the testimony of the employer, Palmer, who said he knew that his daughter, Carrie, the deceased, and young Holmes were good friends, and that appellee was a regular caller upon his daughter; that these young folks

did not talk over with him everything they were going to do, and when asked whether he had anything to do with the trip so far as Miss Clendenning was concerned, or whether that was an affair among the young folks, he said: ''I presume that was between them, her and my daughter, I think.'' If Miss Clendenning had not gone along, appellee would have made the trip just the same, for the trip was being made for the specific purpose of taking the employer's daughter to Des Moines to permit her to do some shopping. It is also to be noted that appellee's hours of work, under his contract of employment with Palmer, were from seven in the morning until six in the evening, so that the quitting whistle must have blown for appellee about the time he was taking his employer's daughter to dinner in Des Moines and more than two hours before the accident happened, as the record shows it happened between eight and nine on the return trip.

The further claim is advanced by appellant that Miss Clendenning was a passenger for hire by virtue of the fact that just before starting the trip appellee's employer told him to drive over to the Purol gasoline station and fill up the tank, which appellee did. This gasoline was charged to the employer and subsequently paid by him. It was a Ford coupe that the appellee owned. The record does not show how much gas was in the tank at the time the car was driven there, or how much gas was put in at that time. The trip was from Keota to Des Moines and back again. A glance at the Iowa map shows that it is a considerable distance, and there is no evidence to show that the amount of gas which appellee received was sufficient to make the entire trip. In addition to that, in this day, when automobiles are so common, it is a well-known fact that the outlay for gasoline is only one of the many expenses incident to ownership and operation of an automobile. In receiving a little gas this appellee did not receive compensation for the cost of driving his Ford coupe, loaded with four people, from Keota to Des Moines and back again.

This question has been before the different courts of the country. We will cite but a few of the decisions.

In Master v. Horowitz, 237 App. Div. 237, 261 N. Y. S. 722, at page 724, the court said:

''Respondents here seek to sustain the verdicts upon the

748

theory that the passengers in defendant's car were being transported either for the benefit of the defendant or for the mutual benefit of the parties, the defendant receiving the benefit of being directed to the dentist, and the passengers receiving the benefit of being transported to the home of the plaintiff Joseph Master for a visit; and in the continuation of the trip to Boston it was contemplated that the purposes and business of the respective passengers were to be promoted.

''The respondents argue also that the passengers were not being transported gratuitously, but for hire, basing their contention upon the fact that before the trip started from Gloversville plaintiff Ethel Master told defendant that she would like to pay for the gas and oil because she did not care to go gratuitously, and that the defendant replied, 'We will take care of that later.'

''Giving to the plaintiffs the benefit of every reasonable inference deducible from these facts, there is not sufficient to establish a contract between the parties by which plaintiffs were obligated to pay for their transportation. Neither are the facts sufficient to establish that the transportation was contractually for the mutual benefit of both the passengers and the operator or owner of the car within the meaning of the statute. The statute refers to a person transported by the owner or operator of a motor vehicle as 'his guest without payment for such transportation.'

''Upon the facts proven, it must be held as a matter of law that the passengers were guests, and,there being no proof that the accident was intentional on the part of the owner or caused by her heedlessness or reckless disregard of the rights of others, plaintiffs failed to make out a cause of action.''

In Askowith v. Massell [260 Mass. 202], 156 N. E. 875, at page 876, the Massachusetts court said:

''It was agreed that the expenses should be divided between them, and that each member also should pay a proportionate share of the cost for gasoline, oil and garage bills. The plaintiff paid his share of the operating expenses to the defendant, who also contributed his part and made no other charge for transportation. * * *

''The plaintiff asked the judge to rule that if he paid a proportionate share of the operating expenses 'he was not a

gratuitous guest of the defendant'; that if the plaintiff was paying a share of the operating expenses 'as compensation for his transportation therein, that circumstance is to be considered in determining the defendant's duty of care toward the plain- tiff'; that if the plaintiff was paying a share of the operating expenses 'as compensation for his transportation therein, he was a passenger for hire.' The requests were denied rightly.''

Finally, the appellant says that his decedent was a pas- senger for hire because of the fact that the appellee collected for the keg of beer which he delivered at Delta and which pro- ceeds his employer allowed him to keep. Appellee did collect for the beer, but there is no evidence to show that there was any understanding between his employer and himself, prior to the time the journey started, that he was to receive the amount of money he collected for the beer delivered at Delta. This record shows that after the accident and while these young people were still in the hospital, Palmer, the employer, came to Des Moines and went to see them. Appellee tendered to Palmer the money he had collected for the beer at Delta, saying: ''I collected for that; here's the money.'' Palmer replied: ''You keep it; you might need it.'' It must be kept in mind that this conversation took place after the accident. And it clearly indicates that the employee was to pay to his employer the amount of money which he collected for the beer at Delta, for the appellee did offer to pay the money to his employer, and at the time he was told to retain it, it was either in the nature of a gift or of a loan made by Palmer to his employee, who was in the hospital and who he thought would probably need the money. Certainly it was not given or loaned as consideration for the taking of Miss Palmer and Miss Clendenning to Des Moines.

In the reply brief of the appellant we find the following paragraph:

''Simerman received gas from his employer for the trip. Standing alone this may not have been enough to make decedent a nongratuitous passenger. Simerman collected for the beer and kept the collection. This alone may not be enough. But, these are two circumstances to be taken into consideration with the other facts and circumstances.''

So we find an admission on the part of the appellant that the paying for the gas alone or the collecting for the beer alone was not sufficient. It is the theory of the appellant that these circumstances, coupled with the fact that Palmer told his employee to take them to Des Moines, was sufficient to show that Miss Clendenning was a nongratuitous passenger. But the trip was not planned by the employer for the purpose of taking Miss Clendenning to Des Moines; it was planned for the purpose of taking his daughter, and, while he had no objection to Miss Clendenning going along, the benefits, if any, that the appellee received, were received, not because Miss Clendenning was along, but because he was taking the daughter of his employer.

The next proposition argued by the appellant is that Miss Clendenning was conveyed in the car for the mutual benefit of the operator and owner, on the one hand, and the passenger, on the other. What benefit did the appellee derive from transporting Miss Clendenning? He received nothing and she gave nothing. It is asserted by counsel for appellant that appellee would have benefited in making this trip and taking these parties in his private car, as he was furthering the purposes of his employer in that he delivered a keg of beer for his employer at Delta, and in making the trip saved his employer a trip to Des Moines, and thus allowed his employer to attend to his business at Keota. Delta, the map shows, is only a short distance from Keota on the way to Des Moines. The keg of beer was placed either by the employer or the employee, in the back of appellee's Ford coupe. It is most apparent that in hauling the keg of beer in the back end of his automobile the defendant merely did a favor for his employer; that if the employee pleased his employer by his willingness to haul some beer in his private pleasure car, or in taking his employer's daughter to Des Moines so that the employer wouldn't have to go to Des Moines himself, any benefit that would accrue to the appellee was an intangible one. Moreover, any benefits derived therefrom were not derived from transporting Miss Clendenning, who certainly had nothing whatever to do with the beer nor with the conduct of Palmer's business, nor did her presence on the trip in any manner serve to relieve Palmer from making the trip to Des Moines, which, according to the record, was made because Palmer's daughter wanted to do some shopping, and was a trip that would have been made by the appellee

whether Miss Clendenning went or not. The presence of Miss Clendenning did not in any way benefit the appellee. But, the appellant argues, the trip was being made for the mutual benefit of Miss Clendenning and the appellee, in that Miss Clendenning was given a free trip to Des Moines and an opportunity to attempt to obtain a position. Where is the mutuality? Appellee would derive no benefit or advantage if Miss Clendenning obtained a position, and certainly he derived no tangible benefit from transporting her without cost to her. She was the only person who could have benefited by the free ride to Des Moines and the securing of a position. It was not sufficient to show alone that there was a benefit to Miss Clendenning. There must be a showing of a mutual benefit, on the one hand, to the operator of the car, and on the other, to the passenger. This the appellant has failed to do. It thus appears that on this unfortunate trip Miss Clendenning was a guest.

The legislature of this state by statute has provided that a guest cannot recover unless the driver was "under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle." Section 5026-b1 of the 1931 Code. There is no such allegation in this petition. The appellant seeks to recover purely on the basis of negligence on the part of appellee.

The lower court was right in directing a verdict, and the judgment and decree of the lower court must be, and it is hereby, affirmed.

KINTZINGER, C. J., and ALBERT, DONEGAN, RICHARDS, ANDERSON, and PARSONS, JJ., concur.

HAMILTON, J., took no part.