Rose Ferrigno *v.* Chase Brass and Copper Company, Inc., et al.

Superior Court        Hartford County        File No. 99459

34

Memorandum filed January 18, 1960

*James F. Kennedy*, of Hartford, for the plaintiff.

*Davis, Lee, Howard & Wright*, of Hartford, for defendants Chase Brass & Copper Co., Inc., and Chester Smith.

*Gordon, Muir & Fitzgerald*, of Hartford, for defendant John F. Leahy.

FITZGERALD, J. This is an action to recover damages for personal injuries, brought by the plaintiff against two sets of defendants and tried to the jury at New Britain. The first set comprises Chase Brass and Copper Company, Inc., a Connecticut corporation, and its truck operator, Chester Smith of Waterbury. The second set includes but a single individual in the person of John F. Leahy of Mattapan, Massachusetts. By their ultimate verdict the jury found the issues for the plaintiff against the defendant Leahy and awarded damages of $35,000 and, in addition, found the issues for the defendants Chase Brass and Smith by direction of the court. This verdict was accepted and ordered to be recorded. The first verdict returned by the jury, which will be discussed later, was identical with the second or ultimate verdict except that damages

awarded the plaintiff against the defendant Leahy were in the amount of $28,500.

The verdict of record, herein referred to as the ultimate verdict, was rendered at 3:30 o'clock on the afternoon of Wednesday, November 25, 1959, the day preceding Thanksgiving, a legal holiday. The file discloses that the plaintiff's motion to set aside the direction of verdict in favor of the defendants Chase Brass and Smith was entered at the clerk's office in Hartford on December 1, 1959. The stamped hour of entry would appear to be 9:10 a.m. on that day. The assigned ground of this motion is that the verdict as directed is against the evidence. Immediately following its acceptance by the court and recording on the afternoon of November 25, 1959, the defendant Leahy filed with the clerk at New Britain a motion to set aside as to him the verdict as being contrary to law, against the evidence and excessive. So also this defendant filed at the same time a motion for judgment notwithstanding the verdict on substantially the same grounds, with emphasis on lack of burden of proof.

Counsel for the defendants Chase Brass and Smith urge that the plaintiff's motion to set aside the direction of verdict be denied summarily on the ground that it was not filed within the period limited by § 233 of the Practice Book. An envelope containing a copy of this motion, mailed by the plaintiff's counsel to counsel for Chase Brass and Smith and shown to the court for inspection at its request, discloses by postmark that the motion was mailed to that counsel on the evening of November 25, 1959, which conforms with the certification of the reverse side of the plaintiff's original motion, eventually entered at the clerk's office in Hartford on December 1, 1959, being Tuesday following the Wednesday of verdict. The court has decided to pass on the merits of this motion rather than to deny it on a technical

ground. To deny this motion on the ground urged would be to exalt technicality over substance, which the exigencies of the occasion do not require.

At the trial, the following facts were not in dispute: On the evening of August 13, 1953, the plaintiff and the defendant Leahy had supper in Hartford with one or more mutual friends. At the conclusion of a social evening, Leahy asked to drive the plaintiff to her home in Wethersfield. The invitation was accepted. The couple left Hartford in Leahy's car, which he operated. The course followed was by proceeding southerly on route 5, also known as the Berlin turnpike. A crossroad in Berlin would lead to the plaintiff's home in Wethersfield, which was to the general east of this highway. The couple stopped at a restaurant on the west side of the turnpike for a sandwich. In resuming their drive the particular crossroad leading to the part of Wethersfield where the plaintiff lived was passed inadvertently, a fact not discovered until after its occurrence. Subsequently, Leahy crossed over to the northbound lanes of the Berlin turnpike (separated from the southbound lanes by an esplanade) and proceeded northerly to regain the appropriate crossroad leading easterly to Wethersfield. Shortly before 2 o'clock on the morning of August 14, 1953, and while operating northerly on the Berlin turnpike, the front end of Leahy's car came into collision with the rear end of a truck owned by the defendant Chase Brass and Copper Company, Inc., which at the time was in the sole charge and custody of its employee, the defendant Smith. The collision occurred at a point where Deming Road crosses the Berlin turnpike. A suspended traffic light, if functioning, would control traffic movements at this intersection. In the general area the Berlin turnpike is composed of two lanes for northbound traffic, each of which is eleven feet in width, having a total width

for northbound traffic of twenty-two feet. At the time of the collision the visibility was clear and the highway dry.

On the liability phases of the case against the two sets of defendants (exclusive of medical witnesses), the plaintiff offered two witnesses in presenting her case in chief, namely, Inspector Duane of the state police, who arrived at the scene shortly after the collision, and herself. The direct examination of Duane was limited and therefore curtailed any extensive cross-examination by counsel for the two sets of defendants. He related that the truck as he found it upon his arrival was in the extreme right lane headed north on the Berlin turnpike, three feet south of the intersection stop line, and that the Leahy car was behind it. Both the plaintiff and Leahy had been removed to the hospital before the inspector's arrival at the scene. He testified further regarding the damage to the rear of the truck and to the extensive damage to the front end of the Leahy car. This was the substance of his testimony on direct and cross-examinations, other than certain measurements referred to in the statement of undisputed facts.

The plaintiff's testimony on direct examination, apart from the earlier social events of the evening and her resulting injuries and special damages, was to the following effect: She was seated on the front seat to Leahy's right, with her head turned somewhat to the right; a moment came when she saw a huge truck in front of the moving car in which she was a passenger; the truck when first seen by her was about fifty feet ahead; the speed of the Leahy car was about 45 miles per hour and she did not remember it slowing down before the collision; and she did not observe whether the truck had its rear lights on. In cross-examination by counsel for the defendants Chase Brass and Smith, the plaintiff

would have it appear that neither the lights of the truck nor the traffic light at the intersection was functioning. She said nothing regarding the lights of the Leahy car. In any event, it was her testimony that the period of time when she had the truck and traffic conditions ahead under observation was short, with the truck in view for a distance of not more than fifty feet.

At the conclusion of the plaintiff's case in chief (her medical witnesses were not subjected to cross-examination), the defendants Chase Brass and Smith moved for a nonsuit. Based upon his experience as the trial judge in *Crowell* v. *Palmer,* 134 Conn. 502 (with particular reference to p. 505), the court denied the motion for nonsuit.

The defendant Leahy then rested and moved for a directed verdict in his favor. The court cautioned his counsel that if he stood on the motion and it was denied, this defendant would be precluded thereafter from offering any affirmative evidence. The motion was pressed and, following arguments thereon, was denied. The court felt that as against the defendant Leahy there were certain aspects of the plaintiff's testimony from which the jury could infer negligence and proximate cause in the absence of any explanation by him as to how the collision came about.

The defendants Chase Brass and Smith proceeded with their offers of proof, with Smith taking the witness stand. In brief, his testimony was as follows: All lights of his truck, including rear lights, were on when he left Waterbury around midnight to drive to Rhode Island and Massachusetts with a load of brass. A few miles south of the intersection he had stopped to get coffee at a stand. In returning to the truck he had to approach it from its rear, and all rear lights were functioning. In approaching

the intersection, the traffic light was turning from green to amber to red. He brought his truck to a full stop and took a cigarette out of his jacket pocket and was in the course of lighting it when the Leahy car plowed into the rear of his stopped truck.

The defendants Chase Brass and Smith then called as a witness a maintenance man who was in charge of its trucks at Waterbury. He testified that the particular truck had been personally inspected by him before it left Waterbury and that all of its lights, including the rear lights, were functioning. This witness later went to the scene of the collision and testified that he found all lights of the truck functioning. The defendants Chase Brass and Smith then made Inspector Duane their own witness. In brief, his testimony on recall was to the effect that he found all lights of the truck functioning and on when he arrived at the scene of the collision and that the suspended traffic light over the center of the intersection was also in operation. Lastly, the defendants Chase Brass and Smith made the defendant Leahy their witness. In brief, his testimony was that the lights of his own car were functioning but that he never at any time saw the truck or a traffic light before impact. Apparently the defendant Leahy's acquaintance with the fact of a collision was acquired by him after his removal to the hospital. For all that appeared, this defendant had no knowledge of anything in front of his moving car. A strong inference could be drawn that he had gone to sleep at the wheel.

In rebuttal, the plaintiff called as a witness a man who claimed to have had some experience in servicing trucks of the character of the truck in question. It was his testimony that the lighting system of a truck could fail momentarily and then resume its full flow of current. This witness had never inspected the particular truck. It was and is the

plaintiff's view that the jury should have had left with it as a question of fact whether the lighting system of the truck, either in toto or just as to the rear lights, momentarily failed just before the collision so as to have the presence of the truck on the highway obscured just preceding the impact. Whether the traffic light at the intersection also had failed momentarily was not suggested by any witness on rebuttal or otherwise called by the plaintiff.

It is the court's considered opinion that the direction of a verdict (directed) for the defendants Chase Brass and Smith was fully warranted. The testimony of the rebuttal witness of the plaintiff was extremely conjectural and speculative. The overwhelming evidence was that the truck had fully stopped because of the red light and was in a stopped position for at least several seconds before the collision, and that all of its lights were functioning ever since it left Waterbury. Furthermore, Inspector Duane testified on recall that the operation of the traffic light could be observed at least 200 feet south of the intersection and that it was in operation and functioning on his arrival at the scene. The plaintiff's motion to set aside the direction of verdict in favor of the defendants Chase Brass and Smith is denied.

The motions of the defendant Leahy are likewise denied. That a jury can draw reasonable inferences is an established proposition in the law. Counsel for the defendant Leahy concede that while the jury could have drawn an inference that he was not maintaining a proper lookout, nevertheless, a further inference that such negligence was a proximate cause of the collision cannot be sustained. The court disagrees on this point. Cases cited by the defendant Leahy (*Sigel* v. *Gordon*, 117 Conn. 271; *Latham* v. *Hankey*, 117 Conn. 5; *Palmieri* v. *Macero*, 146 Conn.

705), are not deemed to be controlling from a factual standpoint.

That the court asked the jury to consider whether the plaintiff should be accorded damages in excess of $28,500 (first verdict returned, read and its acceptance held in abeyance) is deemed not to have been improper. Her special damages came to $17,437. The injury to her left foot resulted in an admitted 25 per cent permanent partial disability of the entire left limb. The scars to her left foot, caused by a series of operations, are permanent, and the foot itself, exhibited to the jury, is permanently discolored. In addition, it was not disputed that the plaintiff, a buyer at the Sage-Allen store in Hartford, has lost opportunities for promotion because of the results of her injuries. While working, she is now and will be required to wear an orthopedic shoe on the left foot. Her life expectancy (age forty-six at the time) is thirty years. Of the total specials (not in dispute), loss of wages alone came to $7350 (seventy weeks at $105 a week). The action of the court in this regard finds support in the statute (General Statutes § 52-223) and in the cases. See *Ryan* v. *Scanlon,* 117 Conn. 428, 436; *Marini* v. *Wynn,* 128 Conn. 53, 56; *Gillette* v. *Schroeder,* 133 Conn. 682, 686.

That the court should have declared a mistrial after the first set of defendants was let out by direction, because the position of the defendant Leahy could have been reduced in the eyes of the jury as the sole remaining defendant, advanced by this defendant at the trial and again stressed in argument, requires no discussion beyond notice of the position taken. No claim is made that the court in its charge to the jury regarding the case against the defendant Leahy said anything to prejudice his position as the remaining defendant on questions of liability.

Further discussion is not required. All motions regarding the ultimate verdict rendered by the jury and accepted by the court are required to be, and are, denied. Judgment may now enter on that verdict.